THOMAS W. ORAM et al., executors, respondents,

*v.*

JOSEPHINE PEIRCE et al., appellants.

[Argued July 8th, 1907.   Decided November 18th, 1907.]

A testator provided in his will as follows: "I do hereby give and bequeath to my son Robert F. Oram, Jr., the equal one-half part of all my right, estate and interest in the partnership business of R. F. Oram & Co., composed of myself and my son Robert, * * * and that the said business be continued with the other equal one-half part thereof owned by my estate, under the sole management and control of my son Robert, for the mutual benefit of my son Robert and of my estate as equal partners in business, and subject to losses and profits for and during the term of twenty years from and after my decease, and the net profits of said business shall be equally divided between said Robert and my estate; the share or part so belonging to my estate to be taken by my executors hereinafter named as part of its general assets; the said part of said stock, personal property and business so bequeathed to my son Robert to be his absolutely, for himself, his heirs and assigns forever."—*Held,* that the one-half of the profits of the mercantile business that belong to the estate are to be treated as income and distributed among the beneficiaries at proper intervals, and not to be accumulated in the hands of the executors for the specified period of twenty years.

---

On appeal from a decree advised by Vice-Chancellor Stevens.

The case involves the construction of the will of Robert F. Oram.   The paragraphs involved are the second, third, fourth and fifth.   They read as follows:

"*Second.* I do hereby give and bequeath to my son Robert F. Oram, Jr., the equal one-half part of all my right, estate and interest in the partnership business of R. F. Oram & Co., composed of myself and my son Robert, at Port Oram, in said county, being all the partnership personal property pertaining to said business, with all book accounts, capital, money, bonds, notes, stock in trade, store goods and merchandise, horses, wagons, harness, coal business, tin and stove business, drug business, lumber business and all equipments and appliances belonging to each branch, as used and employed by said firm, and that the said business be continued with the other equal one-half part thereof owned by my estate, under the sole management and control of my son Robert, for the mutual benefit of my son Robert and of my estate, as equal partners in business, and subject to losses and profits for and during the term of twenty years from and after my decease, and the net profits of said business shall be equally divided between said Robert and my estate; the share or part so belonging to my estate to be taken by my executors hereinafter named as part of its general assets; the said part of said stock, personal property and business so bequeathed to my son Robert to be his absolutely for himself, his heirs and assigns forever.

"*Third.* It is my will, and I do hereby authorize and empower my executors, at any time, to sell and dispose of the share and interest of my estate in said remaining part or half of said partnership business, stock in trade and goods and chattels belonging to the same, to my son Robert, on such equitable terms as may be agreed on, and the proceeds of such sale to be retained in my estate for its use and benefit, as is above provided for said remainder of my said personal property and estate.

"*Fourth.* I give and devise all my real estate, wheresoever situate and in whoesoever hands found, and all the remainder of my personal property and estate not herein by this my will otherwise disposed of, to my executors hereinafter named and to the survivors or survivor of them, in trust for the purposes specified in my will, that is to say: it is my will that all my real estate of which I shall die seized shall be kept together by my said executors in trust, and neither sold nor divided for the period of twenty years after my decease, but the same shall be held in trust by my said executors for the use and benefit of my estate, and the net rents, issues and profits thereof, after keeping the same in repair, paying insurance, taxes and other incidental expenses, shall be divided equally between my four children, namely, Thomas, Robert, Mrs. Josephine Peirce and Mrs. Lottie L. Phillips; *provided, however,* that any part or parcel of my real estate may be sold or disposed of by my said executors, or the survivor of them, at any time during said period of twenty years, when, in the judgment of said executors, or the survivors or survivor of them, the same can be sold or disposed of to the advantage of my estate and for its benefit, but in such case the proceeds of all such sale or sales shall be reinvested by my said executors in some safe and responsible manner, and the income thereof divided in the same manner as the rents, issues and profits of the land were held and divided. .

"*Fifth.* It is my will and I do hereby order and direct my said executors, or the survivor or survivors of them, at the expiration of twenty years as aforesaid, to make partition by sale or otherwise as to them may seem best, of all my real estate then remaining, among my said four

children, share and share alike, but the shares or parts for my said daughters Josephine and Lottie are to remain in the hands of said executors, and for them to receive the interest or income only of their respective shares for and during the term of their natural life, respectively, and at the death of either, leaving child or children or grandchildren, then the share of such deceased daughter to go to such last-named heirs, and in the event of the death of either of my said daughters without leaving any such named heir or heirs, then such share shall go to my surviving children or their heirs, either surviving daughter, however, receiving only the income of such part for life as above set forth, and then to her heirs as above named. And further, it is my will in reference to said remainder of my personal property and estate mentioned and referred to in the fourth item of this my will, that the same be kept together in the hands of my said executors, or the survivors or survivor of them, during said period of twenty years in trust, for the use and benefit of my estate, and the interest and income to be divided in the same manner as is above provided in the matter of the rents, issues and profits of my real estate and under like contingencies in all respects as to my said daughters' shares."

The question that arises is whether the profits of the Port Oram store are to be divided as income among the testator's four children or to be accumulated in the hands of his executors for twenty years.

*Mr. Benjamin W. Ellicott,* for Thomas W. Oram, the respondent.

*Mr. James H. Neighbour,* for the remaining respondents.

*Mr. Albridge C. Smith,* for the appellants.

The opinion of the court was delivered by

SWAYZE, J.

The bequest of the store business in paragraph second is in this language: "The share or part so belonging to my estate to be taken by my executors hereinafter named as part of its general assets." The learned vice-chancellor thought the words "share" or "part" included a bequest of a share of future profits as well as a share of the existing stock in trade. If the word "share" stood alone it might naturally be held to refer to the net profits mentioned in the preceding sentence, but it is coupled

with the words "or part so belonging to my estate," and the testator used "share" and "part" as synonymous. The preceding language of the paragraph must be that which is referred to by the use of the words "so belonging." But for these words the whole personal estate would be assets in the hands of the executors, and the testator intended to limit what was to be taken by his executors to what remained of the stock in trade after the bequest to Robert. The word "part" is used everywhere else in the paragraph as referring to one-half of the existing stock in trade, one equal part being bequeathed to Robert. And in the sentence immediately succeeding the one I have quoted the testator uses the same words in speaking of Robert's share. The contrast in his mind seems to have been between the part of his executors which was to form a portion of the general assets of the estate and the part of Robert which was to be his absolutely.

This construction is sustained by the fact that he describes the equal one-half part of the existing stock of trade in the early portion of the paragraph as owned by his estate and in the sentence above quoted similarly describes it as the part so belonging to his estate. Strictly speaking, the whole of the mercantile business was owned by the estate until the bequest to Robert was assented to by the executors, but it is obvious that when the testator spoke in the latter part of the paragraph of the part so belonging to his estate, he referred to the preceding part of the paragraph where he had spoken of one-half as owned by his estate.

The provision that the executors should take as part of the general assets seems to be quite unnecessary, but a meaning will be attributed to it if we bear in mind that the testator was contrasting the way in which the executors were to take, which was to be as part of the general assets, and the way in which his son Robert was to take, which was to be absolutely. He probably meant to indicate that although this property was to be embarked in business, it was still to be held in the same way as the other assets of his estate by the executors in trust for twenty years and not to belong to them absolutely.

The bequest to the executors is a present bequest taking effect immediately and can hardly be held to include, as a present be-

quest, future profits which might never be realized. The present bequest was of the one-half of the existing stock in trade and the executors would receive the income thereof as they would receive the income of any other investment.

That the testator did not intend that the income for twenty years should be included in this present bequest to the executors is further shown by the direction that the business be continued under the control of Robert for the mutual benefit of Robert and the estate as equal partners in business and subject to losses and profits. One of the ordinary incidents of an equal partnership is the division of profits at short intervals, and the provision that the share of the mercantile business was subject to losses and profits was used to indicate what portion of the testator's estate was to be embarked in trade and to be charged in equity with debts before having recourse to the personal liability of the executors. *Ferry* v. *Laible, 27 N. J. Eq. (12 C. E. Gr.) 146.*

Robert and the executors were to stand on the same footing, and unless we are to conclude that Robert's share of the profits was to be held and accumulated we ought not so to hold as to the estate's share. The very fact that the investment was to be subject to profits as well as losses indicates that if there were profits the estate's share was to take the ordinary course of profits and be treated as income and not as a new principal, thereby increasing the amount at risk in the business.

They ought to be so treated in the absence of express direction to leave the profits in the business or to accumulate them in the hands of the executors. The words "net profits" may, of course, mean the net profits after twenty years of business, but that would be a very extraordinary construction in view of the absence of any provision for Robert's compensation for the management of the business except from his share of the profits; it cannot be that the testator expected him to manage it for twenty years and wait for his compensation, which might be needed for his living expenses, and have it dependent upon the contingency of net profits twenty years hence.

We do not attribute great importance to mere collocation of language, but the words "subject to losses and profits" are con-

nected with the bequest of one equal half part to Robert and with
the reference to one equal half part owned by the estate and pre-
cede the reference to net profits.  The testator had in mind what
he already owned as subject to losses and profits and not what
might thereafter be earned.

In view of the personal responsibility of the executors in the
conduct of a business (*3 Wms. Ex. (6th Am. ed., 1889, 1890)
marg. pp. 1791, 1792*), it would be to the advantage of the execu-
tors to hold the profits of one year to answer the possible losses
of another, but they were put by the testator in a position where
they might protect themselves against personal loss by a sale of
the business under the third paragraph of the will, and in view
of the testator's apparent expectation that the business would
continue to be profitable, we can hardly think that he intended
that the executors should accumulate by way of indemnity
against possible losses so large a fund as was likely to arise in
the course of twenty years.  The third paragraph of the will pro-
vides that the proceeds of the sale of the business be retained in
the estate for its use and benefit.  The words "use and benefit"
are the same as are used in the fourth paragraph, and in that
paragraph they are used in connection with a provision for the
equal division of the rents, issues and profits of the real estate
among his four children.  Such an equal division the testator
naturally considered was for the use and benefit of his estate,
and when he directed by the third paragraph that the proceeds
of the sale of the store should be retained in the estate for its
use and benefit, he must have meant the same disposition as he
expressly provided in the fourth paragraph, that the income
should be divided among his four children.  And if the children
were to receive the income of the proceeds of the sale, it is quite
unlikely that the testator meant that the receipt of that income
by his children should depend upon whether the share of his
estate remained invested in the business under the management
of Robert or whether it was retained by the executors as pro-
ceeds of a sale to Robert.

By the fourth paragraph of the will the testator devises his
real estate and all the remainder of his personal property and
estate "not herein by this my will otherwise disposed of" to his

executors in trust and then disposes of his real estate only by providing that it shall be held in trust by the executors for twenty years and that the net rents, issues and profits· shall be divided equally among his four children. The remainder of his personal property not otherwise disposed of, includes all of his personal property except the one-half part of the Port Oram store bequeathed to Robert and the Hibernia store bequeathed to Thomas, for aside from these two bequests the will contains no final disposition of personal property. The necessary result is that the one-half of the Port Oram store retained by the estate goes to the executors in trust under the fourth paragraph.

That paragraph contains no disposition of the income of the personal property. For that we must look to the fifth paragraph, which provides in turn for "the remainder of my personal property and estate mentioned and referred to in the fourth item," that it be kept together for twenty years for the use and benefit of the estate (again using the language of the third and fourth paragraphs), and the interest and income to be divided in the same manner as above provided in the matter of the rents, issues and profits of his real estate, that is, equally among the four children. It is said that the failure of the testator to use the word "profits" in connection with personal estate, when he uses it in connection with real estate, indicated that he did not mean to include the profits of the store business. But the words "rents, issues and profits" are so commonly connected together with reference to the income of real estate that no great force attaches to this argument; what are called "rents, issues and profits" in real estate are the same as what are naturally called "interest and income" when we speak of personal property. The word "profits" might naturally be used when referring to the proceeds of the mercantile business as a mercantile enterprise as between the executors and Robert, while the word "income" would be a more natural description of these profits after they had reached the executor's hands, and as between the executors and the legatees. The use of the word "income" in addition to the word "interest" indicates that the testator was thinking of productive personal property other than the ordinary interest-producing investment. There seems to have been no such property except that embarked in the business.

We reach the same result if we look at the will in its broader aspect. The effort of the testator was to divide the whole of his large estate, with the exception of the Port Oram store and the Hibernia store, equally among his children. We can easily surmise that his sons had been associated with him in the successful conduct of the stores and that he desired them to have the advantage of the good-will which they, perhaps, had helped to build up. Aside from that, his natural desire would be that his daughters should have an equal share; this desire would not be furthered by tying up so large a proportion of the estate in a trust for accumulation for twenty years, when some of his children would probably never live to enjoy his gift, and one of his daughters could hardly expect children to receive the benefit of the accumulation after her death. The care he evinced in the eighth paragraph of the will for his daughters is inconsistent with the construction which would give them, during the greater part of the whole of their remaining lives, a scanty income in order that the children of one and the nephews and nieces of the other might inherit a larger fortune.

We think the profits of the store should be treated as income of the estate and distributed, at suitable intervals, among the four children. The accounts filed by the executors in the orphans court, in which they charge themselves with net income of the Port Oram business, show that there can be little difficulty in fixing the proper intervals at which the net profits shall be ascertained. The decree must be reversed and the record remitted for further proceedings in conformity with this opinion.

*For affirmance*—THE CHIEF-JUSTICE, REED, VROOM—3.

*For reversal*—GARRISON, HENDRICKSON, PITNEY, SWAYZE, TRENCHARD, BOGERT, VREDENBURGH, GREEN, GRAY, DILL—10.