[Civ. No. 6779. Third Dist. July 1, 1942.]

THE PEOPLE, Appellant, v. LESTER K. GUSTAFSON, as Executor, etc., Respondent.

Earl Warren, Attorney General, H. H. Linney, Assistant Attorney General, and Adrian A. Kragen, Deputy Attorney General, for Appellant.

Whitehurst & Logan for Respondent.

ADAMS, P. J.—This is an appeal from a judgment of the Superior Court of Stanislaus County entered in favor of defendant after demurrer to plaintiff's complaint was sustained without leave to amend.

This action was instituted by the State of California against Lester K. Gustafson, as executor of the last will and testament of John E. Gustafson, deceased, to recover the sum of $570 alleged to be the reasonable value of the use and occupancy by John E. Gustafson of lots 395 and 396 in Patterson Colony, Stanislaus County, subsequent to the sale of same to the state for nonpayment by said Gustafson of delinquent county taxes. The complaint alleged that the property was deeded to the state on June 29, 1939, but that Gustafson continued to occupy same from December 6, 1937, to December 6, 1940; that on the latter date the state demanded of him the said sum of $570, alleged to be the reasonable value of the use and occupancy of said property during the afore-

said period of occupancy; that on December 7th Gustafson instituted and commenced the payment of delinquent taxes in installments, pursuant to the provisions of section 3817a of the Political Code of the State of California, and that said plan was still in full force and effect; that said John E. Gustafson died testate about December 25, 1940, that Lester K. Gustafson was appointed and qualified as executor of his will, that a claim was duly presented to said executor for the said sum of $570, but that said claim was rejected.

To said complaint defendant demurred on the grounds that it did not state facts sufficient to constitute a cause of action; that plaintiff was guilty of laches in that no action to recover possession of said propery was instituted for a period of over three years while Gustafson was occupying the property, and that it had permitted decedent to institute the payment of taxes in installments without making or tendering a lease, and after permitting decedent to continue in the occupancy of the premises. Waiver of the right to demand anything for use and occupancy was also set up.

Demurrer was sustained without leave to amend and plaintiff appeals from the judgment in favor of defendant entered thereafter.

Appellant contends that after the deed of Gustafson's property to the state was executed the state became the absolute owner of said real property and that by virtue of such ownership it could require that Gustafson pay to it the reasonable value of his use and occupancy; also that section 3773 of the Political Code of this state, as amended in 1925, specifically gives the state the right to exact from a former owner in possession the reasonable value of his use and occupancy even though no lease is exacted of him, and when he has not been notified in advance of the demand that he would be required to make such payment.

Respondent contends that neither the ownership acquired by the state by virtue of its deed, nor the provisions of section 3773, *supra,* give the state such right, but that if they do, the institution of an installment redemption plan under section 3817a of the Political Code destroys it; also that by its delay in making a demand upon Gustafson and by its failure to institute an action for possession of the property, the state has waived any right it might have, and that it is estopped to urge it.

The questions presented then, appear to be, *first,* whether

by virtue of its tax deed, and independent of the provisions of section 3773 of the Political Code, the state can compel a former owner, who remains in undisturbed possession of tax deeded property without notice that he will be required to pay for his use and occupancy, to pay the reasonable value of such use and occupancy; second, whether section 3773 of the Political Code authorizes the state to exact payment for such use and occupancy under such circumstances; *third,* whether, if section 3773, *supra,* gives such right, the institution of redemption proceedings under the installment plan provided for in section 3817a, *supra,* destroys same; and *fourth,* whether in this case, the state by its delay in making a demand upon Gustafson, has waived any right it may have had to exact payment for the use and occupancy of the land.

While section 3787 of the Political Code provides that a tax deed conveys to the state the absolute title to the property described therein, with the exceptions stated, such property is nevertheless subject to the right of redemption. The Supreme Court said, in *Anglo Cal. Nat. Bank* v. *Leland,* 9 Cal. (2d) 347 [70 P. (2d) 937], at page 353, that "The title acquired by the state, or an instrumentality thereof, at a tax sale is not the same as that vesting in a private purchaser, since the object of the purchase is not the acquisition of the property, but rather the collection of the taxes. (37 Cyc. 1355, and *Board of Commrs.* v. *Lucas, Treasurer,* 93 U. S. 108 [23 L. Ed. 822].)'". Also, see Blackwell on Tax Titles, 5th ed., § 964.

Appellant cites no cases holding that by virtue of a tax title *alone,* a state can compel a former owner left in undisturbed possession to pay for his use and occupancy. Furthermore it is the settled policy of the law to give a delinquent taxpayer every reasonable opportunity compatible with the rights of the state, to redeem his property, and to make his burden as light as possible; (*Dougery* v. *Bettencourt,* 214 Cal. 455, 462 [6 P. (2d) 499]; *Lachmund* v. *Johnson,* 47 Cal. App. (2d) 377, 380 [117 P. (2d) 920]); and the return to the tax rolls of the property which has been sold for taxes in order that it may again support general governmental functions is in the public interest. (*Anglo Cal. Nat. Bank* v. *Leland, supra,* and cases therein cited.)

Appellant relies upon section 3334 of the Civil Code which provides that the detriment caused by the wrongful occupation of real property in cases not embraced in certain desig-

nated sections of the codes, is deemed to be the value of the use of the property for the time of such occupation, etc.; and it cited *Richmond Wharf & Dock Co.* v. *Blake,* 181 Cal. 454 [185 Pac. 184]; *Samuels* v. *Singer,* 1 Cal. App. (2d) 545, 553 [36 P. (2d) 1098, 37 P. (2d) 1050], and *Cullet Corp. of America* v. *Rosenberg,* 306 Ill. 267 [28 N. E. (2d) 351]. But in none of these cases was the property involved tax deeded property, and they are not in point. ■ In the case before us Gustafson cannot be said to have been in possession unlawfully. The execution of the deed of his property to the state did not *ipso facto* render his possession unlawful (*Sears* v. *Willard,* 165 Cal. 12, 14 [130 Pac. 869]; *Teich* v. *Arms,* 5 Cal. App. 475, 479-480 [90 Pac. 962]); and no attempt to dispossess him appears to have been made.

Therefore, we are not inclined to accept the proposition that, solely by virtue of the title acquired through a tax deed, the state can exact payment for the use and occupancy of the property from the former owner left in possession, especially where, as here, such possession has continued without objection by the state. If the state has power to exact such payment it must be by virtue of statutory enactment authorizing such action.

■ This brings us to the second question above set forth, to wit: whether, under the circumstances of this case, section 3773 of the Political Code authorizes the state to exact from a former owner in possession, the reasonable value of his use and occupancy of the property.

That section provides in part:

"Notwithstanding any other provisions of law to the contrary, the State, by and through the Controller, shall have the sole and exclusive power and authority *to lease and rent,* and to receive and collect *all rents, issues and profits* arising in any manner from property heretofore or hereafter deeded to the State pursuant to the provisions of section 3785 of this code, which power and authority shall accrue from and after the date of recording of the deed to the State.

"The Controller, or any person designated by him, *may* exact from the former owner of said property, or any person having any interest therein, or any person in the possession, actual or constructive, of said property, or any part thereof, an accounting for said rents, issues and profits, and *may,* at any time after the recording of the deed to the State as afore-

said, demand and receive possession of the property so conveyed, and such possession shall be surrendered to the Controller or to any person designated by him. On the request of the Controller made to the Attorney General or to the district attorney of the county in which any part of the land is located, an action of unlawful detainer or of ejectment shall be brought in the name of the people against any persons *unlawfully* occupying the property.

"The Controller or any person designated by him is hereby authorized and empowered to lease and rent such lands, or any part thereof, in the name of the Controller, and for that purpose in the name of the Controller, and under his authority, to agree upon the terms, conditions, rentals and covenants of such leases, to execute, acknowledge, deliver and record the same, to collect *the rentals, issues, profits or other consideration accruing or arising under such leases, and give receipts and acquittances therefor,* to consent to the assignment or subletting or cancellation of such leases, to give, serve and post notices and demands concerning the leased premises, including notices and demands under the forcible entry and unlawful detainer acts, to terminate and cancel leases in cases of violation of the terms, conditions and covenants thereof on the part of the lessees, to demand and receive possession of the leased premises, to institute and prosecute actions and proceedings for the recovery of possession of the demised premises, or of the rents, issues and profits thereof, including actions of forcible entry or unlawful detainer or other actions or proceedings concerning the leased premises, including actions to prevent waste or concerning injuries to the premises, or for the removal of appurtenances or fixtures, or the destruction thereof, to authorize repairs necessary to preserve improvements on the lands, and, in the name of the Controller and under his authority, to do and perform such other matters and things as may be necessary in the premises in the matter of leasing lands deeded to the State under the provisions of section 3785 of this code. For the enforcement of the provisions of this paragraph of this section, the Attorney General shall, upon request of the Controller, commence an action on behalf of the State. . . .

"All moneys received by the State Controller for the rental of the tax deeded properties shall be placed in the State Treasury to the credit of the tax deeded land rental fund and

shall not be credited on the amount necessary to be paid in redemption of the property.'' (Italics added.)

Under this section the Legislature has conferred power upon the state to ''lease and rent'' tax deeded property, and to receive and collect all ''rents, issues and profits'' arising from the same. Also the controller may exact from the former owner or any person having any interest therein, or any person in possession, actual or constructive, an accounting for rents, issues and profits; demand and receive possession of such property; and secure the institution of proceedings in unlawful detainer or ejectment against any persons *unlawfully* occupying the property.

It might be noted in passing that if the state merely by virtue of its ownership of tax deeded property, prior to the enactment of the foregoing section, had possessed the power to exact from the former owner in possession, payment for his use and occupancy, it could as well be argued that, by virtue of such ownership it also had the power to lease and rent such property and to exact an accounting for rents, issues and profits therefrom; and if it had such power before, it was unnecessary to confer same in section 3773 of the Political Code.

In the instant case the state did not lease or rent the property in controversy, nor did it seek to exercise the right conferred by the statute to receive or collect rents, issues or profits therefrom, if any there were. The controller did not attempt to exact from the former owner any accounting nor did he demand possession nor institute any proceedings in unlawful detainer or ejectment. The present action is not a suit for accounting. For all that appears the former owner was left in undisturbed possession for over three years, after which time a demand was made upon him to pay the reasonable value of the use and occupancy for a period prior to the demand.

Aside from the right enjoyed by a former owner of tax deeded property to remain in possession until a sale of the land by the state, as held in the cases cited, *supra*, it is inferable from section 3773, *supra*, also that he may be left in undisturbed possession, and that no lease or agreement to pay rent need be exacted of him, and no accounting for rents, issues and profits need be required of him. The authority granted to the controller by this section is permissive as is indicated by the use of the word ''may,'' and by the alternative given

to him. And to have required that the controller lease or rent tax deeded property, or that he collect the rentals, issues or profits therefrom, might well have been to demand the impossible, as no lessee might be found and no rents, issues or profits arise.

Assuming but not deciding that the power to "lease and rent," conferred upon the state by said section, would have authorized the state to exact from decedent a lease or agreement to pay rental, to demand possession in the event of his refusal to enter into such lease or agreement, and to effect his removal by proceedings in ejectment or unlawful detainer upon his refusal to surrender possession, the right which the state had to lease and rent and to receive and collect all rents, issues and profits arising from the property, does not compel the conclusion that the controller may exact payment for use and occupancy where no agreement exists and when no demand for possession was ever made. As hereinbefore stated, the primary purpose of statutes providing for the conveyance to the state of title to property that is tax delinquent, is the collection of taxes, and not the acquisition of the property or of other income therefrom. Such statutes should, therefore, be given a construction favoring the delinquent taxpayer.

 Appellant urges that the right of the state to exact payment for "use and occupancy" flows from that provision of section 3773, *supra*, that "the State, by and through the Controller, shall have the sole and exclusive power and authority . . . to receive and collect all rents, issues and profits" from property which is deeded to the state pursuant to the provisions of section 3785, *supra;* that this language gives to the controller the greatest right that could be given to collect anything from the premises; that the Legislature could not have used any language which would have allowed to the controller greater power to collect from the occupant of tax deeded land either agreed rent or the reasonable value of his use and occupation of the land.

But the statute does not in terms confer the right to collect from the former owner in possession the value of his use and occupation, and the language taken as a whole indicates that the authority conferred upon the state "to receive and collect all rents, issues and profits" has no such broad meaning as that contended for by appellant, but means only such rents, issues and profits as may arise from leases of the property or, perhaps such net profits as might arise from a business carried

on upon the premises. The power conferred upon the controller by the section is "to collect the rentals, issues, profits or other consideration accruing or arising under such leases" as he is authorized to execute. Throughout the section emphasis is placed upon rents and leases.

Words of a tax statute cannot be extended by implication. If the Legislature had intended that the controller should have the right to recover from the former owner in possession the value of his use and occupancy of the tax deeded property, as well as the right to "lease and rent" and "to receive and collect" all "rents, issues and profits" arising from such property, no reason appears why it should not have said so in terms.

In section 707 of the Code of Civil Procedure, which provides that a purchaser from the time of sale until a redemption, and a redemptioner from the time of his redemption until another redemption, is entitled to receive from the tenant in possession, the rents of the property sold, *or* the value of the use and occupation thereof, not only is the right to recover for use and occupancy conferred, but such right is distinguished from the right to receive rents.

██ Furthermore, the phrase "rents, issues and profits" has a well understood meaning and refers to rents collected by the party in possession, and/or the net profits accruing to him from said property, and not to the rental value or the value of use and occupation. (*Amberg* v. *Claussen,* 186 Okla. 482 [98 P. (2d) 927]; *Smith* v. *Howell,* 91 Ore. 279 [176 Pac. 805]; *Fifty-Ninth St. Real Estate Co.* v. *Murphy,* 95 Misc. 191 [159 N. Y. Supp. 203]; *In re Stevens,* 111 App. Div. 773 [98 N. Y. Supp. 28, 31]; *Equitable Life Insurance Co.* v. *Brown,* 220 Iowa 585, [262 N. W. 124]; *Hopkins* v. *Remy,* 64 N. J. Eq. 12 [53 Atl. 676, 677]; *Oram* v. *Peirce,* 67 N. J. Eq. 391 [67 Atl. 1053, 1056]; 54 C. J. Sec. 6, p. 385.)

In *Amberg* v. *Claussen, supra,* an action upon a supersedeas bond which stipulated that the obligor should "pay the rents and profits collected from, or rental value" of the premises, the court held that the obligee had the option to sue for rents and profits actually collected *or* the rental value of the property, saying that "rental value" and "value of use and occupancy" meant substantially the same but that "rents and profits" collected were not the same as rental value.

In *Smith* v. *Howell, supra,* the right to hay cut from land

by a foreclosure purchaser pending redemption was in issue. The court held that title to said hay was in the purchaser, subject to an accounting for rents, issues and profits, and said that the term "rents, issues and profits," applies only to the net profits and such as are in the nature of rents. Citing 7 Words & Phrases, p. 6090; also citing *In re Vedder's Will* (Sur.) 15 N. Y. Supp. 798, to the effect that "rents and profits" of real estate mean "the sum annually yielded" by the same.

Also that the right to "receive and collect all rents, issues and profits" conferred by section 3773 of the Political Code is clearly distinguishable from a right to exact payment for use and occupancy, is further evidenced by the provision of the section that the controller or any person designated by him, may *exact an accounting* for said rents, issues and profits —obviously meaning "rents, issues and profits" received by some one other than the state. The statute is not intended as a money making scheme for the benefit of the state but to encourage redemptions, providing only that if any profits accrue therefrom the state and not the delinquent taxpayer may be the beneficiary.

Our conclusion is, therefore, that the language of section 3773 of the Political Code does not authorize a suit by the state for the reasonable value of the use and occupancy of tax deeded land by the former owner left in possession.

The foregoing conclusion renders unnecessary a determination of the third question, to wit: whether the institution of redemption proceedings on the installment plan provided by section 3817a of the Political Code by the former owner of tax deeded land, who has remained in possession, terminates any right the state may have had to sue for the reasonable value of the prior use and occupancy of the premises.

Respondent argues that in initiating redemption proceedings in the instant case Gustafson agreed to pay the full amount he would have been required to pay if the property had been redeemed in a lump, plus interest on all unpaid balances, also all current taxes accruing during the period of redemption; that the state is getting all that it would have received if there had never been any delinquency, and penalties and interest as well; that therefore it would be inequitable for the state also to exact payment from him for the use of the land during a part of the period for which it is being paid taxes, penalties and interest in full.

Appellant relies upon the provision of section 3817a that payments under the section are not a redemption or partial redemption and do not affect the state's interest in the real estate, and that payments "are compensation for the use of the real estate"; and it argues that use of the real estate applies solely to the use for the period covered by each payment under the installment plan and has no reference to any prior period; that any other construction would result in inequities since one delinquent taxpayer may have resided on his land for a long period without initiating an installment payment plan, while another may have initiated such a plan promptly; that the Legislature could not have intended that the same amount should be compensation for differing periods of occupancy; and that if respondent's theory be correct an occupant of land who might have received income of thousands of dollars from tax deeded property could wipe out the obligation to the state by a comparatively small payment to the county and, after making one payment, could default in the installment plan and be free and clear of all obligations to the state.

This argument of appellant leaves out of consideration the fact that the man who delays redemption pays interest for his longer period of delinquency; it confuses the right conferred upon the state by section 3773, *supra,* to rent or lease the land and to collect the rents, issues and profits therefrom, with the right contended for to sue the former owner in possession for his use and occupancy; and it loses sight of the primary purpose of legislation which is to lighten the burden of the taxpayer. If the state could exact payment for use and occupancy from a former owner who elects to pay his delinquencies on the installment plan it could exact such payment from one who redeemed his property by payment of the whole redemption amount in a lump sum; and such taxpayer, though his obligation to the county had been cancelled and the title of the state to his land terminated, would find himself still burdened with an obligation to the state for his prior period of occupancy, and this though he may never have received one cent of income from the property during the period of such occupancy. If he had in fact entered into a lease or had agreed to pay rent for the premises, or had there been "rents, issues and profits" arising therefrom of which he had been the beneficiary, a different situa-

tion would be presented and it might be argued more forcefully that installment payments of delinquencies were not to supersede rentals agreed to be paid for any period prior to their institution, or rents, issues and profits received by him for such period.

■ Whether the state could, after the institution of such a payment plan, collect agreed rentals unpaid by the former owner in possession for a period prior to redemption, or exact an accounting for rents, issues and profits accruing during such period is not in issue in this case; but if the state were entitled to exact payment for the use and occupancy of the property for a period prior to redemption we are of the opinion that the provisions of section 3817a, *supra,* that installment payments are compensation for the property would apply to the whole period of delinquency rather than for the periods during which the payments were being made. The effect of that provision that installment payments are not a redemption or a partial redemption and do not affect the state's interest in the real estate, is to continue the title in the state until complete redemption is effected, so that if such installment payments are not completed no complications as to title may arise. The provision of section 3773, *supra,* that moneys received by the controller for the rental of tax deeded property shall not be credited on the amount necessary to be paid in redemption, is not inconsistent with this conclusion. If the taxpayer elects to pay rental, or rental is paid by another, no injustice results from providing that such rentals shall not be credited upon the redemption amount due the county.

The foregoing lends force to our conclusion that section 3773, *supra,* does not authorize a suit for use and occupancy.

As to the question of waiver appellant contends that estoppel cannot be invoked against the state by reason of failure to act on the part of its officials, and that the doctrine of laches cannot be invoked against the sovereign. These are broad general statements to which there are exceptions.

■ A state, as well as an individual, may be estopped where the necessary elements or grounds of estoppel are present (*City of Los Angeles* v. *Cohn,* 101 Cal. 373 [35 Pac. 1002]; 31 C. J. S. § 138, p. 405); it may be estopped when acting in its proprietary capacity as distinguished from its governmental capacity (31 C. J. S., § 140, p. 413); and it may be

estopped by the acts of its public officials done in the exercise of powers expressly conferred by law, and by their acts or omissions when acting within the scope of their authority (31 C. J. S., § 142, p. 417.)

As hereinbefore noted, section 3773, *supra*, authorizes but does not require the leasing or renting of tax deeded property by the controller; it leaves to his discretion the determination of whether he shall exact a lease or contract to pay rent from the former owner, whether he shall dispossess him, and whether he shall exact an accounting for rents, issues and profits; and where, as here, he has elected for a period of over three years to do nothing it would not be deemed inequitable to hold that he had waived the right, if such he had, to exact payment for the use and occupancy of the premises. Such determination is not necessary for a decision in this case, however; and for the reason above stated, that the controller does not have the right to sue a former owner left in possession of tax deeded property for his use and occupancy of same, the judgment is affirmed.

Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 27, 1942. Gibson, C. J., Shenk, J., and Traynor, J., voted for a hearing.