[Civ. No. 47014. First Dist., Div. Two. July 8, 1981.]

FABER L. JOHNSTON, JR., et al., Plaintiffs and Appellants, v. SIG SANCHEZ et al., Defendants and Respondents.

COUNSEL

Johnston, Miller & Giannini and John H. Blake for Plaintiffs and Appellants.

Selby Brown, Jr., County Counsel, and Ralph F. Long, Deputy County Counsel, for Defendants and Respondents.

OPINION

**ROUSE, J.**—Plaintiffs, Faber Johnston, Jr., and Roberta MacLaughlin, appeal from a summary judgment in favor of defendants, the Santa Clara County Board of Supervisors and its individual members.

Plaintiffs sought a writ of mandate compelling defendants to order a refund of redemption penalties assessed against plaintiffs' property. Plaintiffs also sought a declaratory judgment stating that the tax collector had erroneously or illegally collected redemption penalties from plaintiffs, and requiring defendants to order a refund under section 5096 of the Revenue and Taxation Code.[1] Judgment was rendered for defendants on plaintiffs' petition for writ of mandate, and a summary judgment was then granted in favor of defendants on plaintiffs' cause of action for declaratory relief. Plaintiffs have appealed only from the latter judgment.

Plaintiff MacLaughlin owned an undivided one-half interest in real property located in Santa Clara County, and was a cotrustee with plaintiff Johnston in the remaining one-half interest. On June 30, 1970, pursuant to section 3436, plaintiffs' property was sold to the state for nonpayment of assessed property taxes. Plaintiffs paid no taxes on the property between 1970 and 1974. On June 27, 1974, plaintiffs entered into an installment agreement with the state under section 4217 to pay the delinquent taxes. The redemption schedule called for the amount necessary to redeem[2] to be paid in five yearly installments.

Plaintiffs made three payments on time, but failed to meet the April 10, 1977, deadline for the fourth payment. On March 30, 1977, plaintiffs had entered into a contract to sell the property, and, anticipating escrow to close before April 10, had expected to use the proceeds of the escrow to pay the fourth installment. The escrow did not close until June 10, 1977.

At the time of default, plaintiffs' redemption balance was $30,023.71. Because of the default, however, the amount necessary to redeem was recomputed according to section 5560 of the Tax Collectors' & Re-

---

[1] Unless otherwise specified, all statutory references are to the Revenue and Taxation Code.

[2] Under section 4102, the amount necessary to redeem is the sum of sold taxes (i.e., the amount of unpaid taxes which are a lien on the property), delinquent penalties and costs, and redemption penalties. In 1974, the amount necessary to redeem was $75,059.26:

| | |
|---|---|
| Sold taxes 1970-1974 | $54,690.36 |
| Delinquent penalty | 3,281.44 |
| Costs and fees | 12.14 |
| Redemption penalty | 17,075.32 |
| Total | $75,059.26 |

demption Officers' Manual. As a result, the new redemption balance was $44,009.73, a difference of $13,986.02 for a two-month delay in payment. Plaintiffs paid the full amount assessed, and redeemed the property. They then brought suit for a refund of the excess penalties. Defendants' motion for summary judgment was granted.

The purpose of the summary judgment procedure is to establish whether a lawsuit contains triable issues of fact. (*Coleman* v. *Fitzgerald* (1967) 252 Cal.App.2d 58, 61 [60 Cal.Rptr. 173].) Where it appears by agreement or otherwise that there is no material issue of fact to be tried, and that the sole question before the trial court is one of law, it is the duty of the trial court on a motion for summary judgment to hear and determine the issue of law. (*Burke Concrete Accessories, Inc.* v. *Superior Court* (1970) 8 Cal.App.3d 773, 775 [87 Cal.Rptr. 619], citing *Wilson* v. *Wilson* (1960) 54 Cal.2d 264, 269 [5 Cal.Rptr. 317, 352 P.2d 725].) If, upon appeal, the appellate court disagrees with the trial court's determination of the question of law, the court should reverse the summary judgment and enter judgment accordingly. (*Burke Concrete Accessories, Inc.* v. *Tolson* (1972) 27 Cal.App.3d 237, 244-245 [103 Cal.Rptr. 513].)

The central issue in this case is whether, after a default, redemption penalties may be imposed for the period during which installment payments were timely made. This issue is based solely upon the interpretation of certain statutes, and thus presents a question of law for this court to decide. (*Estate of Madison* (1945) 26 Cal.2d 453, 456 [159 P.2d 630].)

Under section 5560 of the Tax Collectors' & Redemption Officers' Manual, which is based on section 4336, the tax collector is directed to disregard all installment payments made before the default, and to recompute the amount necessary to redeem (including redemption penalties) as of the date of redemption. After such recomputation, amounts paid before default are then credited.

Plaintiffs argue that the commencement of an installment plan initiates a process of redemption which, under section 4218,[3] may not be terminated. Their argument is based upon an apparent inconsistency in

---

[3]Section 4218 provides that "During the time payments are made under this article, there shall not be: [¶] (a) A deed to the State for taxes. [¶] (b) Any termination of the right of redemption."

the term "redemption," as used in sections 4103[4] and 4223.[5] Under section 4103, which provides that redemption penalties accrue at a rate of 1 percent a month to the time of redemption, redemption penalties are assessed to the date of commencement of the installment plan. Section 4223, however, provides that installment payments are not a redemption or partial redemption.

This apparent inconsistency was addressed by the court in *People v. Gustafson* (1942) 53 Cal.App.2d 230, 242 [127 P.2d 627]. There the court held that the effect of section 4223[6] was to continue title in the state until the property was fully redeemed so that no title complications would arise if the installment schedule was only partially completed. (P. 242.) Plaintiffs interpret *Gustafson* as standing for the proposition that section 4223 should be disregarded and that "redemption" should be interpreted, as in section 4103, as occurring at the commencement of the installment plan. In this way, according to plaintiffs, the amount necessary to redeem is computed only once, at the commencement of the plan, and is not recomputed later if a default occurs. In the event of a default, the taxpayer is merely charged a redemption penalty on the payment due until such payment is made.

Plaintiffs' theory is not supported by the law. First, we find no inconsistency in the use of the term "redemption." The procedure by which section 4103 operates is mandated by section 4216.[7] Section 4103 is so worded that it applies both to the initial computation, and to recomputation after default.

---

[4]Section 4103, provides, in pertinent part, that "Redemption penalties are the sum of the following: [¶] (a) Beginning July 1st of the year of sale to the state, on the amount of sold taxes at the time of sale, 1 percent a month to the time of redemption. [¶] (b) Beginning July 1st of each subsequent year, on the unpaid taxes for which the property would have been sold to the state in that year if there had not been a previous sale, 1 percent a month to the time of redemption . . . ."

[5]Section 4223 provides that "Payments under this article are not a redemption or partial redemption and do not affect the State's interest in the real estate. The payments are compensation for the use of the real estate."

[6]At the time *People v. Gustafson, supra,* was decided, what is now section 4223 was then a part of section 3817a of the Political Code.

[7]Section 4216 provides, in pertinent part, that "As used in this article: [¶] (a) 'Redemption amount' means the total amount which would be necessary to redeem property from sale for taxes at the time election is made to pay delinquent taxes in installments under this article."

■ Second, the right to redemption, upon which plaintiffs rely, exists only during the period when payments are timely made, as section 4218 expressly provides. This restriction is reiterated in section 4222, which provides that the right of redemption may be terminated if payments are not made on time.

Third, *People* v. *Gustafson, supra,* 53 Cal.App.2d 230, in no way restricted the express language of section 4223 that installment payments grant no rights to the taxpayer but are compensation for use of the land.

■ Fourth, section 4336 is expressly applicable to the situation, as in this case, where a taxpayer commences an installment plan, fails to complete it on schedule, and thereafter tenders the entire balance due to complete redemption. Under that section, when a default occurs, the amount necessary to redeem (which includes redemption penalties (§ 4102)) is recomputed. All previously paid taxes are then credited to that amount.

Moreover, plaintiffs were aware of the consequences of defaulting on the installment plan. At the bottom of the certificate of installment payment of delinquent taxes, there appears the following: "Payments do not represent a partial redemption and do not affect the State's interest in the property. Any payments made on defaulted plans are lost to the payor unless full redemption is made."

■ Plaintiffs also contend that they are entitled to the benefits of a recent amendment to one of the statutes here in issue. They point out that, in 1978, the Legislature amended section 4222 to provide as follows: "If all payments are not made on or before the dates prescribed, the property may be deeded to the state or the right of redemption may be terminated in the same manner as if no election to pay delinquent taxes in installments had been made. In the event that the default occurs at the time the second or subsequent installment is due and the assessee or agent of the assessee can, by substantial evidence, convince the tax collector that the payment was not made through any fault of the assessee the tax collector may reinstate the account upon receipt of a payment in an amount reflecting the installment due plus interest under Section 4221 to the date of reinstatement, provided the payment is made prior to the time the property is deeded to the state or prior to June 30 of the current fiscal year, whichever occurs earlier." (Stats. 1978, ch. 430, § 20, pp. 1492-1493, effective January 1, 1979.)

Plaintiffs claim that section 4222, as amended, should be applied to this case even though it became effective after the summary judgment was granted in the trial court.

■ Ordinarily, a statute will not be given a retroactive effect unless it is procedural or remedial in nature, and even a remedial statute will not be given a retroactive effect if to do so would interfere with a vested right. (*Aetna Cas. & Surety Co. v. Ind. Acc. Com.* (1947) 30 Cal.2d 388, 393-394 [182 P.2d 159]; *McBarron v. Kimball* (1962) 210 Cal. App.2d 218, 220 [26 Cal.Rptr. 379].)

A statute which affects a penalty is considered to be remedial in nature and will be given retroactive effect if it has the effect of mitigating the penalty. (*Liquor Sellers, Inc. v. Department of Alcoholic Bev. Control* (1970) 3 Cal.App.3d 536, 540 [83 Cal.Rptr. 567].) Upon default under an installment plan, the amendment to section 4222 permits the tax collector to determine whether the amount necessary to redeem should be recomputed, or whether interest alone should be assessed on the payment. The statute mitigates the penalty imposed by section 4336 and, therefore, may be given retroactive effect unless a vested right would thereby be impaired.

Vested rights are not easily defined. ■ Generally, interests which it is proper for the state to recognize and protect, and which may not be impaired arbitrarily without injustice, are vested rights. (*American States W. S. Co. v. Johnson* (1939) 31 Cal.App.2d 606, 614 [88 P.2d 770]; *City of Los Angeles v. Oliver* (1929) 102 Cal.App. 299, 310 [283 P. 298].)

The state's power to collect taxes is constitutionally protected. (Cal. Const., art. XIII, § 31.) In *Weston Inv. Co. v. State of California* (1948) 31 Cal.2d 390, 393-394 [189 P.2d 262], however, the court found that redemption penalties were not so guaranteed because, under sections 2617 and 2618, the delinquent penalty[8] "attaches to" the taxes, but there was no similar provision for the redemption penalty. Yet, even though the right to collect redemption penalties is not constitutionally guaranteed, the tax collector is statutorily empowered to collect such penalties. Defendants have cited no authority, however, which implies that a statutory right is necessarily a vested right, nor has our research

---

[8]The delinquent penalty is a 6 percent charge on unpaid taxes (§ 2617), and is one component of the amount necessary to redeem under section 4102.

disclosed any such authority. Common sense would suggest that not all statutory rights are vested rights.

■ Under the broad definition set forth above, it appears that the determinative question is whether the right to collect redemption penalties is a right which may not be impaired arbitrarily without effecting an injustice.

Clearly, the right here in issue would not be impaired arbitrarily. Retroactive application of section 4222 would require that the tax collector, as the entity empowered to collect the penalty, make a finding of fact that the tax assessee's failure to pay an installment on time was not due to any fault on his part. Thus, the right to collect redemption penalties could only be impaired with the acquiescence of the party to whom the right was granted. Also, impairment of the right would not effect an injustice. As is indicated by *Weston Inv. Co.* v. *State of California, supra,* 31 Cal.2d 390, the purpose of the penalty is not to punish the taxpayer or collect revenues, but to encourage the taxpayer to redeem his property and to make payments on time. (P. 393.) Section 4222 would only apply when it is determined that the taxpayer's default was due to no fault of his own. In light of the purpose of the penalty, then, we conclude that an injustice might well occur if the taxpayer were not allowed to demonstrate to the assessing power's satisfaction that his default was unavoidable.

The judgment is reversed. The trial court is directed to render a declaratory judgment that plaintiffs are entitled to apply for relief under section 4222, as amended.

Taylor, P. J., and Smith, J., concurred.