553 P.2d 840 (1976)
ROCKY MOUNTAIN ASSOCIATION OF CREDIT MANAGEMENT, Plaintiff-Appellee,
v.
HESSLER MANUFACTURING COMPANY, a Colorado Corporation, Defendant, Wood Bros. Homes, Garnishee, First Commercial Corporation, Intervenor-Appellant.
No. 75-490.
Colorado Court of Appeals, Div. III.
May 6, 1976.
Rehearing Denied May 27, 1976.
Certiorari Denied August 30, 1976.
*842 Sobol & Sobol, Harry Sobol, Denver, for plaintiff-appellee.
Berenbaum, Berenbaum, Weinberger & Susman, Michael L. Ehrlich, Denver, for intervenor-appellant.
Selected for Official Publication.
SMITH, Judge.
Plaintiff Rocky Mountain Association of Credit Management (RMA) obtained a judgment in the amount of $6,741.24 against defendant Hessler Manufacturing Company on February 2, 1973. Hessler had a claim against Wood Bros. Homes for $48,022.61 that was based on a mechanic's lien. On September 18, 1974, Wood Bros. was garnished by RMA for the amount of its judgment against Hessler. Approximately one month later, on October 15, 1974, First Commercial Corporation sought permission to intervene in the garnishment proceeding, contending that the $6,741.24 which RMA sought was part of Hessler's accounts receivable in which it had a perfected security interest that gave it a claim to the garnished amount superior to the claim asserted by RMA.
First Commercial based its claim on the following facts. On May 10, 1972, First Commercial had filed with the Secretary of State a general financing statement covering, inter alia, Hessler's accounts receivable. On May 22, 1972, Hessler had executed a security agreement pledging its accounts receivable to First Commercial as security for the payment of certain debts. Upon execution of the security agreement, First Commercial's security interest had become perfected. See § 4-9-303, C.R.S. 1973.
Hessler's claim against Wood Bros. was negotiated and settled on December 3, 1974. As part of that settlement First Commercial released Wood Bros. from any claims First Commercial might have had against it arising from any of Wood Bros.' debts to Hessler. As part of the settlement with Hessler, Wood Bros. agreed inter alia to pay $6,741.24 into court, pursuant to the garnishment by RMA. The balance of the settlement was either held in escrow, paid into court pursuant to other garnishment proceedings, or paid directly to Hessler.
In the garnishment proceeding, the trial court found that First Commercial's release of Wood Bros. also released any security interest the intervenor might have had to the $6,741.24 on deposit with the court. It also concluded that RMA's lien arising from the garnishment gave it a claim to the money superior to the general unsecured interest of First Commercial. While the latter might be true as an abstract proposition, we do not agree that First Commercial relinquished its secured claim to the accounts receivable by releasing Hessler's debtor.

I.
A release is an agreement to which the general contract rules of interpretation and construction apply. Little Rock Packing Co. v. Massachusetts Bonding & Insurance Co., 262 F.2d 327 (8th Cir.); Jordan v. Brady Transfer & Storage Co., 226 Iowa 137, 284 N.W. 73. Thus, the release involved here must be construed in light of the manner in which its terms relate to all of the circumstances surrounding the transaction. Leach v. La *843 Guardia, 163 Colo. 225, 429 P.2d 623; Dickson v. Dick, 59 Colo. 583, 151 P. 441. We are convinced that the release executed by First Commercial in favor of Wood Bros. was not intended to, and did not, constitute a relinquishment of its security interest and thus its secured claim to the disputed $6,741.24.
The purposes of garnishment are to reach supposed assets of the judgment debtor in the hands of third parties, to determine the ownership of that property, and to provide for its equitable distribution. Worchester v. State Farm Mutual Automobile Insurance Co., 172 Colo. 352, 473 P.2d 711. See Bradgon v. Bradt, 16 Colo.App. 65, 64 P. 248. A creditor may successfully garnish only that property that is admitted by a garnishee to belong to the judgment debtor, Kinzie v. Alexander, 108 Colo. 534, 120 P.2d 194; Denver Joint Stock Land Bank v. Moore, 93 Colo. 151, 25 P.2d 180, or that is determined by the court to belong to him. Bragdon v. Bradt, supra. See Union Deposit Co. v. Driscoll, 95 Colo. 140, 33 P.2d 251. The garnishment in this case was essentially a mechanism by which the judgment debtor, Hessler, collected from the garnishee, Wood Bros., for the benefit of his creditor, R.M.A. C.R.C. P. 103(j) & (z).
If a garnishee admits that he has property of the debtor in his possession or under his control, he then is ordered by the court to surrender that property. C.R.C.P. 103(j). If, instead, the garnishee delivers the property at issue to the judgment debtor, he may become personally liable to the creditor for the lesser of the value of the property or the value of the debtor's obligations. Great Western Finance Co. v. Hamilton National Bank, 76 Colo. 48, 230 P. 115. It was only to protect Wood Bros. against this contingency that First Commercial gave it a release. Hence, that release did not relinquish First Commercial's secured interest.
The deposit of the $6,741.24 by Wood Bros. into the trial court, pursuant to the settlement of Hessler's claim against it, had the same effect, insofar as this proceeding is concerned, as an admission by Wood Bros. that the money deposited belonged to Hessler. Thus, when Wood Bros. deposited the funds pursuant to the garnishee summons, it removed itself from the garnishment action. The court was free to determine the priority of the various claims to the money. A subsequent release by First Commercial of any claims it might have against Wood Bros. was not a release of Hessler and could not affect Hessler's liability to it. Hence, the trial court erred in its conclusion that First Commercial released its claim to the $6,741.24.

II.
The Uniform Commercial Code, as enacted in Colorado, defines an account receivable as "any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper." Section 4-9-106, C.R.S.1973. Wood Bros.' obligation to Hessler was included within this definition; hence, First Commercial's rights, as the holder of a security interest in Hessler's accounts receivable, are governed by the Code. Section 4-9-102(1), C.R.S.1973. That Hessler had secured this obligation by a mechanic's lien on real property does not change this conclusion; the application of the Code to First Commercial's security interest in the Wood Bros.' account is not affected by the fact that Hessler had secured payment on that account with a mechanic's lien. Section 4-9-102(3), C.R.S. 1973; see Official Comment 4 to that section.
It is undisputed that First Commercial had perfected a security interest in Hessler's accounts receivable on May 10, 1972. The garnishment on which RMA bases its claim to the money paid into court was commenced on September 18, 1974. Under the Code the garnishor acquires the status of a "lien creditor". Section 4-9-301(3), C.R.S.1973.
*844 Section 4-9-301(1)(b), C.R.S. 1973, provides that an unperfected security interest is subordinate to the interest of a person who becomes a lien creditor without knowledge of the security interest and before it is perfected. Welbourne Development Co. v. Affiliated Clearance Corp., 28 Colo.App. 313, 472 P.2d 684. The contrary is likewise true, that a lien acquired after the perfection of a security interest is subordinate thereto. Hence, the trial court erred in its conclusion that First Commercial's perfected interest was subordinate to RMA's lien. Barocas v. Bohemia Import Co. Inc., 33 Colo.App. 263, 518 P.2d 850; J. White & R. Summers, Uniform Commercial Code § 25-2(1972).
Judgment reversed and cause remanded with directions to enter judgment not inconsistent with this opinion.
PIERCE and BERMAN, JJ., concur.