JACKSON COUNTY FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff,

v.

MADUFF MORTGAGE CORPORATION, a Nevada Corporation; Maduff Group, Inc., an Illinois Corporation; Maduff & Sons, Inc., an Illinois Corporation; Colorado National Bank of Denver, a National Banking Association; Columbia Savings and Loan Association; Aspenridge Development Corporation, a Colorado Corporation; Richard L. Sullivan; Sondra Sullivan; Donald L. Jackson; and Patricia V. Jackson, Defendants.

FIRST AMERICAN TITLE INSURANCE COMPANY, a California Corporation, Plaintiff,

v.

MADUFF MORTGAGE CORPORATION, a Nevada Corporation; Colorado National Bank of Denver, a National Banking Association; Jackson County Federal Savings and Loan Association, a Federally-Chartered Savings and Loan Association, Defendants.

MADUFF MORTGAGE CORPORATION, a Nevada Corporation, Plaintiff,

v.

Donald L. JACKSON and Patricia V. Jackson, Defendants.

Civ. A. Nos. 84–JM–505, 84–JM–933 and 84–JM–1722.

United States District Court, D. Colorado.

May 13, 1985.

James L. Kurtz-Phelan, I.H. Kaiser, Berenbaum & Weinshienk, Hugh A. Burns, Phillip S. Figa, Burns & Figa, P.C., Denver, Colo., for plaintiff.

Richard I. Brown, Atler, Zall & Haligman, Englewood, Colo., Christine J. Jobin, Michael E. Katch, Thomas R. Bromberg, Hall & Evans, Denver, Colo., Val W. Sandana, Fullerton, Lang, Richert & Patch, Fresno, Cal., for defendants.

## ORDER

JOHN P. MOORE, District Judge.

THIS MATTER is before me on motions for summary judgment on behalf of the plaintiff, Jackson County Federal Savings

and Loan Association and defendant Colorado National Bank in civil action 84–JM–505. Jurisdiction is based upon 28 U.S.C. § 1332. Colorado National Bank (CNB) moved for summary judgment as to its interest in a promissory note and deed of trust. Subsequent to the filing of CNB's motion, plaintiff, Jackson County Federal Savings and Loan Association (JCF), moved the court for partial summary judgment as to its competing interest in the same promissory note and deed of trust. The primary issues raised by the closely related motions are the nature of the respective interests of CNB and JCF and the appropriate controlling law to be applied in the determination of the relative priorities of those interests. Based upon the pleadings, affidavits, and other materials submitted by the parties and on the arguments of the parties, I am persuaded that defendant's motion for summary judgment must be granted in part and denied in part. Plaintiff's motion for partial summary judgment will be denied.

This action arises out of financing arrangements entered into by the parties for the construction of a residential real estate project located in Keystone, Colorado, and known as Phase II of Aspenridge Townhomes. Defendant Maduff Mortgage Corporation (MMC), as primary or lead lender on the project, closed on a $5,850,000.00 construction loan with the developer, defendant Aspenridge Development. As collateral for the loan, Aspenridge Development executed a promissory note and a construction deed of trust in favor of MMC. Half of the funds for the loan were provided to MMC by CNB under a line of credit established by prior agreement between MMC and CNB. The other half was funded by JCF pursuant to a participation agreement between JCF and MMC. Other defendants became involved in the controversy as guarantors of either the Aspenridge loan or of MMC's obligations. JCF and CNB claim conflicting interests in the Aspenridge note and deed of trust as a result of their respective agreements with MMC and their corresponding extensions of credit to MMC. The priorities of their interests became the paramount issue when Aspenridge Development defaulted on its note and deed of trust and MMC defaulted on its obligations to JCF and CNB. The property encumbered by the Aspenridge deed of trust was subsequently sold through foreclosure proceedings instituted by CNB. Pursuant to an order of this court of March 29, 1984, the funds realized from the foreclosure sale were placed in an escrow account pending the outcome of this litigation.[1]

JCF filed suit seeking a declaratory judgment that it owned one-half of the Aspenridge note and deed of trust and that, in accordance with the participation agreement, it is entitled to be paid amounts due it from the proceeds of the foreclosure sale before CNB collects its share of the proceeds. JCF also seeks injunctive relief ordering CNB to pay over JCF's share of the proceeds or, in the alternative, restraining the distribution of the proceeds by CNB. In addition, JCF seeks compensatory and punitive damages. JCF's claims are based upon a variety of legal theories, including its rights as an owner of half of the note and deed of trust, the existence of an equitable lien or a constructive trust, as well as allegations of breach of contract, negligence, breach of fiduciary duty, fraudulent inducement, intentional misrepresentation and conspiracy to defraud.[2]

For the purposes of this summary judgment proceeding, the sequence of events surrounding the creation of the respective interests of CNB and JCF is important. On January 13, 1982, CNB and MMC entered into an agreement ("Loan Agreement") whereby CNB established a $5 million revolving line of credit for MMC "in order that funds will be available when

---

1. The parties vigorously argue the issue of their respective priorities because the proceeds of the sale are apparently inadequate to pay off both interests in full.

2. This is but a brief summary of plaintiff's allegations, which cover 106 paragraphs as the basis for 18 claims for relief in the complaint.

needed for the financing of real estate loans." [Loan Agreement, ¶ 1.1(B)]. The Loan Agreement recited that all advances under the line of credit "shall be evidenced by Mortgage Company's Promissory Note dated January 13, 1982, in the amount of Five Million and No/100 Dollars." (¶ 2.6.) As collateral for the line of credit, the Loan Agreement required that MMC grant to CNB a "first security interest in all Notes evidencing all Construction Loans, Land Acquisition and Development Loans and Permanent Loans now existing or hereafter arising, together with all items of collateral securing each such loan including without limitation all Deeds of Trust, mortgages, and security agreements." (¶ 3.1.) MMC agreed to deliver such items as necessary when it requested an advance or when delivery was requested by CNB. CNB first advanced funds to MMC under the line of credit on April 29, 1982, when MMC closed on the construction loan with Aspenridge Development. On that date MMC endorsed the Aspenridge note and deed of trust and delivered them to CNB. It is undisputed that CNB retained possession of the instruments from that date.

JCF's involvement in the Aspenridge project began on April 8, 1982, when it signed an agreement with MMC which JCF characterizes as the "Letter Agreement." The letter, which was written to Richard McLaughlin, President of JCF, by Philip Brazeau, Vice President of MMC, contained an offer on behalf of MMC to JCF of "two excellent investment opportunities in the state of Colorado." In the letter MMC requested a 50% participation from JCF in the $5,850,000.00 construction loan for Phase II of Aspenridge and specified that the participation "would be on a standard U.S. League participation form and would be on a last in-first out basis."[3] Mr. Brazeau requested that Mr. McLaughlin sign

in the space provided if the terms and conditions of the letter met with his approval and stated that MMC would then "proceed to close as expeditiously as possible." Mr. McLaughlin and Steven Nelson, Vice President of JCF, signed the letter.

Subsequent to the signing of the Letter Agreement, there was additional correspondence between JCF and MMC regarding the terms and the status of the arrangement between them. Then, on May 1, 1982, JCF and MMC executed a "Master Participation Certificate," which stated that MMC sold to JCF a participation of $2,925,000.00 in a loan for $5,850,000.00 made to Aspenridge Development on April 29, 1982. The certificate specified that the "First Deed of Trust and Security Agreement, dated April 29, 1982, from Aspenridge Development Corporation for the benefit of Maduff Mortgage Corporation" was "collateral security." It recited that the participant, JCF, was to be promptly paid its pro rata share of all payments of interest and all payments of principal until the participation was repaid "in accordance with the Letter Agreement, dated April 8, 1982."

CNB argues that, through the Loan Agreement with MMC and its advancement of funds for the Aspenridge project, it acquired a security interest in the Aspenridge note and deed of trust which was perfected when CNB took possession of the instruments on April 29, 1982. It contends that, because JCF did not acquire an interest in the instruments until after that date, CNB has a superior interest and is entitled to be paid the full amount due it out of the proceeds of the foreclosure sale before any amounts are disbursed to JCF.[4]

With respect to its interest, JCF claims that the Letter Agreement of April 8, 1982, which it contends was incorporated into the

---

**3.** "Last in-first out" refers to the order of disbursement and subsequent repayment of funds. MMC was to disburse its share (50%) of the loan funds to Aspenridge Development before JCF disbursed any funds. JCF was to be fully repaid its share of the principal before MMC received a repayment of principal.

**4.** CNB argues that JCF acquired its interest, if any, on May 1, 1982, at the earliest, when the Master Participation Certificate was executed. CNB also contends that JCF's interest may have arisen as late as October 1982 when JCF first disbursed funds under the agreement.

Master Participation Certificate, gave it ownership of one-half of the Aspenridge note and deed of trust as of that date.[5] It argues that MMC owned only half of the instruments when it delivered them to CNB on April 29, 1982, and, therefore, that MMC granted to CNB a security interest in one-half of the instruments in accordance with MMC's proportionate share. As a result, JCF claims that it is entitled to be paid the full amounts due it under the Letter Agreement and Master Participation Certificate and that such amounts should be paid from the proceeds of the foreclosure sale before any disbursement to CNB. JCF supports its claim of superiority by alleging that, because CNB took the instruments with notice of JCF's interest, CNB cannot claim status as a holder in due course of the instruments in order to defeat JCF's ownership claim.

CNB moved for summary judgment that: (1) CNB has a security interest in the Aspenridge note and deed of trust; (2) CNB perfected its interest on April 29, 1982; (3) CNB has priority and its interest in the Aspenridge note and deed of trust is superior to any interest that may be claimed by JCF; and (4) that issues raised by JCF concerning alleged knowledge or an alleged duty to inquire on the part of CNB and CNB's status as a holder in due course of the Aspenridge note and deed of trust are irrelevant to the determination of its interest. JCF opposed CNB's motion and moved for partial summary judgment that: (1) JCF is the owner of one-half of the Aspenridge note and deed of trust; (2) MMC granted a security interest to CNB only in the proportionate ownership of the Aspenridge note and deed of trust retained by MMC; (3) CNB took possession of the Aspenridge note and deed of trust with actual notice of JCF's ownership of one-half of the Aspenridge note and deed of

trust, and such possession is subject to JCF's ownership interest; (4) JCF is entitled to payment from the proceeds from the foreclosure sale in accordance with its rights as the owner of one-half of the note and deed of trust as set forth in the Letter Agreement and Master Participation Certificate; and (5) JCF is entitled to repayment in full of all principal and interest due it prior to any payments made to CNB or MMC.

While CNB and JCF are in substantial agreement regarding the sequence of events leading up to the controversy between them, they vigorously dispute the nature of their respective interests, as well as the controlling law to be applied to the determination of the relative priority of those interests. CNB claims that Article 9 of the Uniform Commercial Code (Secured Transactions) applies, giving it a perfected security interest which is superior to any interest claimed by JCF. On the other hand, JCF argues that the law is well established that a participating lender is an owner of its proportionate share of the mortgage or deed of trust securing a loan in which it participates. According to JCF, since Article 9 applies only to the determination of the relative priorities of competing security interests and since JCF is not a secured party, but an owner, Article 9 is inapplicable to the controversy between JCF and CNB.[6] JCF also advances the theory that Article 9 by the terms of Colo. Rev.Stat. § 4–9–104(j) (Cum.Supp.1984), cannot apply to the creation of any interest in the Aspenridge deed of trust because it is an interest in real estate.[7]

JCF contends that Article 3 of the Uniform Commercial Code governs the controversy between it, as owner and holder of one-half of the Aspenridge note and deed of trust, and CNB. Because CNB cannot

---

5.  JCF argues, in the alternative, that its arrangement with MMC gave rise to a equitable lien or a constructive trust on its behalf, either of which is superior to CNB's interest.

6.  JCF apparently believes that Article 9 is inapplicable as well to a determination of the priority of its interest as a lienor through the creation

of an equitable lien or as the beneficiary of a constructive trust.

7.  Section 4–9–104(j) excludes from Article 9 "the creation or transfer of an interest in or a lien on real estate, including a lease or rents thereunder."

qualify for the protections afforded a holder in due course of instruments under Article 3 due to its actual or constructive notice of JCF's interest, JCF argues that CNB's interest is secondary to its interest. Even if CNB could qualify as a holder in due course, JCF contends that the note is not a negotiable instrument, and, therefore, CNB's claim of superiority must fail. JCF argues that, as owner of one-half of the instruments, it is entitled to have the participation agreement enforced according to its terms, which include a provision that JCF be paid in full before MMC's interest is reimbursed.

■ A federal court exercising jurisdiction in a diversity action must apply the substantive law of the forum state. *Klaxon v. Stentor Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Article 9 of the Uniform Commercial Code, as adopted by Colorado, applies to "any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, accounts or contract rights." *See* Colo.Rev.Stat. § 4-9-102 (Cum.Supp.1984). Comment 1 to § 4-9-102 indicates that the scope of Article 9 was intended by the drafters to be very broad in that all consensual security interests in personal property are covered, including sales of accounts, chattel paper, and contract rights "whether intended for security or not unless excluded by Section 9-104(f)." The Loan Agreement between CNB and MMC was clearly intended to create a security interest in the Aspenridge note and deed of trust as evidenced by the language of § 3.1:

> As security for each Advance, Mortgage Company grants to Bank a first security interest in all Notes evidencing all Construction Loans, Land Acquisition and Development Loans and Permanent Loans now existing or hereafter arising, together with all items of collateral securing each such Loan, including without limitation all Deeds of Trust, mortgages and security agreements.

It is without question, therefore, that Article 9 properly applies to the attachment and perfection of CNB's interest in the Aspenridge note and deed of trust which were delivered to CNB pursuant to the Loan Agreement.

Furthermore, the fact that part of the collateral, the deed of trust, secures an interest in real estate does not bring it within the exclusion of § 4-9-104(j) to make Article 9 inapplicable. I agree that, under this section, Article 9 would not apply to the creation of MMC's interest in the Aspenridge note and deed of trust, which is an "interest in or lien on real estate." However, § 4-9-104(j) must be read in conjunction with § 4-9-102(3), which states that "[t]he application of this article to a security interest is not affected by the fact that the obligation is itself secured by a transaction to which this article does not apply." Comment 4 to this section demonstrates that Article 9 applies to situations in which a secured party takes a note and deed of trust to secure the obligation of a mortgagee by using an example which is analogous to the case at hand. In the example, the owner of Blackacre borrows $10,000.00 and secures his note by a mortgage on Blackacre, a transaction to which Article 9 does not apply. The comment then states: "However, when the mortgagee in turn pledges this note and mortgage to secure his own obligation to X, this Article is applicable to the security interest thus created in the note *and* the mortgage." (Emphasis added.)

JFC cites substantial case law in support of its contention that Article 9 cannot apply to the perfection of CNB's interest in the Aspenridge note and deed of trust. While the cases from various jurisdictions are split as to whether the perfection rules of Article 9 apply to a security interest in a mortgage or deed of trust, those supporting JCF's argument are derived from jurisdictions which have amended Comment 4 to read differently from the Colorado version. In more than one of the cases cited by JCF, the court's finding that Article 9 is inapplicable to perfection of an interest in a mort-

gage, deed of trust, or lease turned upon the apparent intent of the legislature in making a change in the language of the comment. For example, in *In Re Bristol Associates, Inc.*, 505 F.2d 1056 (1974), the Third Circuit held that, by deleting the words "and the mortgage" from "this Article is applicable to the security interest thus created in the note and the mortgage," the Pennsylvania legislature expressed its clear intent that Article 9 not apply to the perfection of an interest in a lease.

Furthermore, the two Colorado cases cited by JCF in support of its argument, when read carefully, are consistent with the application of Article 9 to a security interest in a note and deed of trust. The comment by the Colorado Court of Appeals that a deed of trust was not governed by provisions of the Uniform Commercial Code, which JCF cited from *Fort Collins Prod. Credit Association v. Carroll Dairy*, 37 Colo.App. 536, 553 P.2d 95, 97 (1976), was made under the assumption that the deed of trust had been severed from the original note it secured by cancellation or loss of the note. This situation is not presented by the instant case.[8] In *Swofford v. Colorado National Bank of Denver*, 628 P.2d 184, 186 (Colo.App.1981), the Colorado Court of Appeals held that the bank's initial interest in a promissory note and deed of trust were perfected by the mortgagee's endorsement and delivery of the instruments to the bank, "such being personal property." The bank's interest ripened into an interest in real property upon the mortgagee's default on its obligations to the bank and the bank's election to retain the collateral. Contrary to JCF's representation that the court relied heavily on local real estate law in the determination of the bank's rights, the court applied real estate law only to the bank's assertion of *mortgagee's* rights against the *mortgagor*. The

bank's rights in the note and deed of trust with respect to other creditors of the mortgagor were governed by Article 9.

■ It is clear that the creation and perfection of CNB's security interest in the Aspenridge note and deed of trust is properly determined under Article 9. The priority of that interest with respect to JCF's competing interest may also be controlled by Article 9. JCF cannot remove the entire issue of CNB's priority from coverage by Article 9 by merely asserting that it is not a secured creditor of MMC, but an owner of the collateral. The drafters of Article 9 clearly intended that it be applied to a broad spectrum of contests over interests in collateral beyond the narrow situation presented by two or more parties claiming a security interest in the same collateral. Section 4–9–201 establishes that a security agreement may be effective against third parties other than those claiming priority as secured creditors: "Except as otherwise provided by this title, a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors." Furthermore, 4–9–301 specifically addresses the priority of a secured party with respect to claimants who are not secured parties, such as lien creditors or purchasers of certain collateral.

■ Even if JCF establishes beyond question that it owns half of the note and deed of trust, application of the priority provisions of Article 9 will not be precluded. The drafters of Article 9 recognized that, in some instances, the debtor in a secured transaction and the owner of the collateral may not be the same person or entity. In § 4–9–105(1)(d), "debtor" is defined as "the person who owes payment or other performance of the obligation secured, whether or not he owns or has

---

8. Due to the assumption that the note was severed from the deed of trust, *Carroll Dairy* did not present the problem created by applying Article 9 rules to perfection of a security interest in a note and local real estate law to perfection of the deed of trust securing the note. That is, a creditor could have priority in the note but an

inferior interest in the collateral securing the note. This is precisely the kind of situation that Article 9 was designed to prevent. *See Shaw*, Security Interests in Notes and Mortgages: Determining the Applicable Law," 79 Col.L.Rev. 1414 (1979).

rights in the collateral." This section further provides that "debtor" may refer to the obligor or the owner of the collateral, or both, depending on the context required by individual subsections. Section 4–9–112, entitled "Where Collateral Is Not Owned By The Debtor," sets out the duties of a secured party toward the owner of the collateral where the secured party knows the identity of the owner. However, the comment to § 4–9–112 states that the section was not intended to "cut across the law of conversion and ultra vires." It continues: "Whether a person who does not own property has authority to encumber it for his own debts and whether a person is free to encumber his property as collateral for the debts of another are matters to be decided by other rules of law and are not covered by this section." Therefore, ownership of all or part of the collateral by someone other than the debtor does not automatically remove the conflict between the owner and a creditor from coverage by Article 9, though other rules of law may apply to the ultimate resolution of the dispute among all of the parties involved.

The Colorado courts have also recognized that the perfection and priority provisions of Article 9 may apply to situations in which the collateral subject to conflicting claims is not owned by the debtor. In *American National Bank v. Magor*, 28 Colo.App. 522, 476 P.2d 267 (1970), the Colorado Court of Appeals held that a bank's perfected security interest in construction equipment, which was in the debtor's possession pursuant to a conditional sales contract, was superior to the vendor's interest even though the sale eventually fell through and the vendor retained title to the

equipment. The court found that the trial court erred in its holding that the priority of the bank's security interest depended upon its extension of credit in reliance on ownership of the collateral by the debtor. The court's decision turned on its identification of the nature of the interest in conflict with the security interest and the steps which the competing party could have taken to perfect that type of interest. Because the vendor failed to file a financing statement as required by the Chattel Mortgage Act, Colo.Rev.Stat. §§ 21–1–4, 21–1–16 (1963), its interest, which could be characterized as an ownership interest, was inferior to the perfected security interest. Therefore, it may be logically reasoned, the priority of certain ownership interests in relation to a conflicting security interest may depend upon specific perfection steps or protective measures provided for that particular type of interest in other areas of local law, as well as the application of Article 9 provisions to the perfection of the security interest.[9]

■ In conjunction with its contention that Article 9 does not apply to the resolution of its conflict with CNB, JCF vigorously argues that Article 3 of the Uniform Commercial Code controls the dispute giving JCF a superior interest in the Aspenridge note and deed of trust. JCF's continued insistence on the application of Article 3 is a bit puzzling because CNB has not elected to assert its rights as a holder in due course of the Aspenridge note and deed of trust, but rather, it claims superiority only as a secured party with a perfected security interest under Article 9. I agree with CNB that its ability to qualify as a

---

9. JCF contends that steps to protect or perfect a participation interest in a note and deed of trust are unnecessary because it is the normal practice in the secondary mortgage market to leave the lead lender in possession of instruments taken as security for the loan. It further argues that, since most participation arrangements involve several lenders, it would be illogical to require perfection of each participant's interest. The usual manner of perfecting an interest in instruments is possession by one claiming an interest and only one of the several lenders involved can be in possession of the instruments

at any one time. I am not persuaded, however, that the customs of the mortgage market or the participation of several lenders in a loan dictates that perfection of participation interests is unnecessary or requires that the instruments securing the loan be left with the lead lender. Where perfection by possession is appropriate under applicable law, the instruments could be delivered to a third party as an agent for all the participants. *See, Hutchins*, "What exactly is a Loan Participation?", 9 Rut.Cam.L.J. 447, 460 (1978).

holder in due course is irrelevant to the question of its priority in the instruments as a secured party. For this reason, JCF's arguments regarding CNB's status as a holder in due course and the negotiability of the Aspenridge note and deed of trust will not be addressed.[10]

■ This is the law to be applied to the facts before the court in this summary judgment proceeding. Under Rule 56(c), Fed.R.Civ.P., a moving party is entitled to judgment as a matter of law only if no genuine issue of material fact is presented. The moving party must demonstrate beyond a reasonable doubt that there are no disputed facts or reasonable inferences to be drawn that would require a court's ultimate resolution. *Norton v. Liddel,* 620 F.2d 1375, 1381 (10th Cir.1980). I find that the facts presented by CNB which are undisputed by JCF establish that CNB has a security interest in the Aspenridge note and deed of trust, which are personal property under Colorado law and covered by Article 9. MMC and CNB manifested their intent to create a security interest in the instruments through the execution of the Loan Agreement. Under § 4–9–204(1), CNB's security interest attached on April 29, 1982. On that date, MMC, the debtor, obtained rights in the collateral when it closed the construction loan with Aspenridge Development and took the instruments as collateral. CNB gave value for the purposes of § 4–9–204(1) when it made its first advance for the Aspenridge project on April 29, 1982.

The undisputed facts also establish that CNB perfected its security interest in the Aspenridge note and deed of trust on April 29, 1982, when it took possession of the instruments from MMC. Under § 4–9–304(1), a security interest in instruments "can be perfected only by the secured party's taking possession." No steps beyond taking possession are required to accomplish perfection. Therefore, summary judgment that CNB had a perfected security interest in the Aspenridge note and deed of trust on April 29, 1982, is appropriate.

■ However, the issue of CNB's priority with respect to JCF's interest cannot be resolved on summary judgment. Application of the proper priority rules to the facts of this case requires a determination of the nature of JCF's interest in the instruments and the nature of JCF's interest remains in dispute. If JCF is a secured party, the priority rules of § 4–9–312 may apply. If JCF is indeed an owner or a lienor, the rules embodied in § 4–9–301 may apply alone or in conjunction with local law governing the authority of MMC to encumber property which it does not own to secure its debts.

JCF has not established beyond a reasonable doubt that it acquired an ownership interest, as opposed to a security interest or other right, in the Aspenridge note and deed of trust. The mere existence of a participation agreement is not conclusive proof of the creation of an ownership interest on behalf of the participant. Despite JCF's assertions to the contrary, the nature of the interest created by participation agreements and the legal consequences of those agreements are not well established. *H.C. Franklin v. Commissioner of Internal Revenue,* 683 F.2d 125, 128 (5th Cir. 1982). Six possible relationships between the participant and the lead lender have been defined: debtor-creditor, assignment, tenancy in common, joint venture, agency, and trust. *See, Hutchins,* "What Exactly Is A Loan Participation?", 9 Rut.Cam.L.J. 447, 448 (1978). The proper characterization of a participant's interest depends upon a case-by-case analysis of the terms of the agreement in question and the intentions of the parties in executing the agreement. JCF points to specific language in the Master Participation Certificate which

10. This is not to say that the issue of CNB's knowledge or notice of JCF's interest when CNB took possession of the instruments is entirely irrelevant to the ultimate outcome of this case. If § 4–9–112 applies to the controversy, the state of CNB's knowledge may determine its duties toward JCF. Notice or knowledge may be relevant to the relative rights of the parties under rules of law outside of Article 9 if such rules are found to be applicable to this dispute.

states that MMC "sold" a participation to JCF to support its claim of an ownership interest in the Aspenridge note and deed of trust. However, other language in the document is consistent with the identification of JCF as a secured creditor. For example, the only specific reference to the note and deed of trust from Aspenridge Development identifies the instruments as "collateral security." Thus, the exact nature of JCF's interest is unclear from the face of the Master Participation Certificate. The intentions of the parties with respect to the agreement must, therefore, be examined at trial. Furthermore, JCF also claims a superior interest through the creation of an equitable lien or a constructive trust with respect to the instruments, but it has failed to demonstrate that the undisputed facts establish existence of either a lien or trust.[11] Because the nature of JCF's interest is a question of law to be resolved upon proof of fact, summary judgment on the nature of JCF's interest and on the relative priorities of the interests claimed by JCF and CNB will be denied.

Accordingly, it is

ORDERED that defendant Colorado National Bank's motion for summary judgment is denied in part and granted in part. It is by judgment declared that Colorado National Bank has a security interest in the Aspenridge note and deed of trust which was perfected on April 29, 1982, and that Colorado National Bank's status as a holder in due course is irrelevant to the determination of the priority of that security interest. Summary judgment that CNB's interest is superior to any interest claimed by Jackson County Federal Savings and Loan is denied.

FURTHER ORDERED that plaintiff Jackson County Federal Savings and Loan's motion for partial summary judgment and request for a hearing on its motion are denied.

11. The exact point at which JCF acquired any interest it claims also remains to be resolved. JCF maintains that it acquired its interest on April 8, 1982, upon the execution of the Letter Agreement. CNB argues that JCF's interest

FURTHER ORDERED that Colorado National Bank's motion to supplement the response to JCF's motion for summary judgment (filed September 18, 1984) is granted.

could not have arisen until the Master Participation Certificate was signed on May 1, 1982, at the earliest. Resolution of the issue may be crucial to a determination of the relative priorities of the interests.