**CITICORP PERSON–TO–PERSON FINANCIAL CENTER, INC., a Colorado corporation, Plaintiff-Appellee,**

v.

**FREMONT NATIONAL BANK, a Colorado corporation, Defendant-Appellant.**

**No. 85CA0002.**

Colorado Court of Appeals, Div. III.

April 2, 1987.

Machol & Machol, P.C., Jacques A. Machol, III, Denver, for plaintiff-appellee.

Hawthorne & Meconi, Rocco F. Meconi, Canon City, for defendant-appellant.

METZGER, Judge.

In this action to determine the right to the proceeds from an installment land sale contract, defendant, Fremont National Bank (the Bank), appeals the summary judgment entered in favor of plaintiff, Citicorp Person-to-Person Financial Center, Inc., (Citicorp). Citicorp had claimed a right to the proceeds by virtue of the "rents, issues and profits" clause in a deed of trust it held on the real property. The Bank had claimed a right to the proceeds by virtue of an assignment of the proceeds from the seller, and a perfected security interest therein pursuant to Article 9 of the Uniform Commercial Code. We reverse and remand with directions.

Monte and Martha Campbell owned a 40–acre tract of land in Fremont County, Colorado. This land was subject to a deed of trust in favor of the Federal Land Bank of Wichita, which is not a party to this dispute. The land was also subject to a second deed of trust in favor of Nationwide Finance Corporation, Citicorp's predecessor in interest.

On June 15, 1977, the Campbells entered into and recorded with the Fremont County Clerk and Recorder an installment land sale contract agreeing to convey 11.26 acres of their 40–acre tract to Charles and Mona Randal. This contract specifically referred to the two deeds of trust mentioned above.

On June 23, 1977, Citicorp entered into a loan agreement with the Campbells. To secure the promissory note involved in that transaction, the Campbells executed a deed of trust covering the entire 40–acre tract, and recorded it that same day with the

Fremont county clerk and recorder. The note provided that the sole collateral for the loan was the land itself, and made no mention of the installment land sale contract between the Campbells and the Randals. The deed of trust included a clause granting Citicorp the right to "rents, issues and profits" upon default by the Campbells. As part of this transaction, the note and deed of trust in favor of Nationwide Finance were cancelled.

In December 1980, the Campbells obtained a loan from the Bank. As part of this transaction, the Campbells assigned their right to receive monthly payments under the Randal installment land sale contract, and gave the Bank possession of the installment land sale contract documents. The loan documents were filed with the county clerk and recorder that same month, and on February 13, 1981, the Bank filed with the Secretary of State an appropriate Uniform Commercial Code financing statement, specifically describing the installment land sale contract.

Thereafter, Monte Campbell filed a petition for bankruptcy, and Martha Campbell disappeared. Citicorp sought relief from the automatic stay and obtained an order of abandonment. It then initiated foreclosure proceedings, bid in the full amount of the debt still owing under its 1977 note, and obtained a trustee's deed.

The Bank continued to collect the monthly payments from the Randal installment land sale contract pursuant to its assignment. Citicorp brought this action seeking a determination that it had a prior right to the proceeds from the installment land sale contract pursuant to its now foreclosed deed of trust and its trustee's deed.

The parties stipulated to the above facts for the hearing on their cross-motions for summary judgment. The trial court found that, despite Citicorp's failure to secure a specific interest in the proceeds from the installment land sale contract in its 1977 note and deed of trust, the Bank was on record notice of Citicorp's deed of trust when it entered into its loan agreement with the Campbells in 1980. The court further found that Citicorp's deed of trust

secured its interest as to all "rents, issues, and profits" and ruled that the proceeds from the installment land sale contract constituted "rents, issues, and profits" as contemplated by the default provisions of Citicorp's deed of trust. Thus, it concluded, upon foreclosure, Citicorp obtained legal title to the entire 40 acres, subject only to the Randal's equitable interest under the installment land sale contract, and Citicorp was therefore entitled to receive the proceeds from the installment land sale contract, which were not governed by Article 9 of the Uniform Commercial Code. The court then entered summary judgment in favor of Citicorp and against the Bank.

## I.

The Bank contends that the trial court erred in its determination that the right to the proceeds from the installment land sale contract did not constitute a security interest governed by Article 9 of the Uniform Commercial Code. As authority for this proposition, it relies on § 4-9-102(3), C.R.S., which provides: "[T]he application of this article to a security interest in a secured obligation is not affected by the fact the obligation is itself secured by a transaction or interest to which this article does not apply."

Citicorp asserts that the trial court correctly determined that the right to the proceeds from the installment land sale contract did not constitute a security interest governed by Article 9 of the Uniform Commercial Code. As authority for this proposition it relies on § 4-9-104(j), C.R.S., which excludes "the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder" from application of the Uniform Commercial Code.

We hold that the right to the proceeds from an installment land sale contract are governed by Article 9 of the Uniform Commercial Code.

The apparent conflict between these two sections is discussed in § 4-9-102, C.R.S. (Official Comment 4), which provides the following illustration:

"The owner of Blackacre borrows $10,-000 from his neighbor, and secures his

note by a mortgage on Blackacre. This Article is not applicable to the creation of the real estate mortgage. However, when the mortgagee in turn pledges this note and mortgage to secure his own obligation to X, this Article is applicable to the security interest thus created in the note and the mortgage."

*See also* J. White & R. Summers, *Uniform Commercial Code,* § 22–6 at 890 (2d Ed. 1980).

■ Security interests in realty paper represent a personal property right to receive payment and are governed by the Uniform Commercial Code. *United States v. PS Hotel Corp.,* 404 F.Supp. 1188 (E.D. Mo.), *aff'd,* 527 F.2d 500 (8th Cir.1975); *Jackson Co. Fed. Sav. & Loan Ass'n v. Maduff Mortgage Corp.,* 608 F.Supp. 588 (D.Colo.1985); *Black v. Sullivan,* 48 Cal. App.3d 557, 122 Cal.Rptr. 119 (1975); *H. & Val J. Rothschild, Inc. v. Northwestern Nat'l Bank,* 309 Minn. 35, 242 N.W.2d 844 (1976); *In re Freeborn,* 94 Wash.2d 336, 617 P.2d 424 (1980). *See also* B. Clark, *The Law of Secured Transactions Under the Uniform Commercial Code,* § 1.8[10](a) (1980); J. White and R. Summers, *Uniform Commercial Code* § 22–6 at 890–91 (2d Ed.1980).

■ A seller's right to receive payment by virtue of an installment land sale contract is a personal property right. *In re Estate of Hills,* 222 Kan. 231, 564 P.2d 462 (1977); *In re Freeborn, supra.* If a mortgagee endorses and delivers a note and deed of trust to secure his own obligation, the holder has a perfected security interest in the instruments, such being personal property. *Swofford v. Colorado Nat'l Bank,* 628 P.2d 184 (Colo.App.1981). *See also Rocky Mountain Ass'n of Credit Management v. Hessler Mfg. Co.,* 37 Colo. App. 551, 553 P.2d 840 (1976).

■ Thus, in this case, the Campbells acquired a personal property right to the proceeds from the Randal installment land sale contract at the time of its execution. The fact that the contract concerned the sale and purchase of real property is of no consequence to a proper characterization of the interest in personal property the Camp-

bells acquired. Their assignment to the Bank of this personal property right to receive the contract proceeds was, therefore, governed by Article 9 of the Uniform Commercial Code.

■ The Bank acquired a secured interest in the proceeds upon the Campbells' delivery of the appropriate documents and execution of the assignment. *See Swofford v. Colorado Nat'l Bank, supra; see also Rocky Mountain Ass'n of Credit Management v. Hessler Mfg. Co., supra.* Nevertheless, the Bank, to ensure its status, filed the appropriate documents with the Secretary of State and with the Fremont county clerk and recorder. *See* § 4–9–401, C.R.S. Consequently, we hold that the Bank has a perfected Article 9 security interest in those proceeds.

## II.

We must, however, analyze the respective alleged priorities of Citicorp and the Bank in light of the Campbells' various transactions, since each party's rights originate with the Campbells.

■ The Campbells' first transaction was the entry into a contract for sale of 11.26 acres of their 40 acres to the Randals. After this transaction, the Campbells maintained legal title to the entire 40 acres and passed equitable title to the 11.26 acres to the Randals. *See Ulander v. Allen,* 37 Colo.App. 279, 544 P.2d 1001 (1976). The Campbells' recording of this contract constituted notice to all the world, since all instruments affecting title to real property are subject to the provisions of the recording statute. *Plew v. Colorado Lumber Products,* 28 Colo.App. 557, 481 P.2d 127 (1970).

Next, the Campbells entered into the loan agreement with Citicorp, executing a note and deed of trust. The deed of trust constituted a lien on the Campbells' legal title to the 40 acres for the benefit of Citicorp. Section 38–35–117, C.R.S. (1982 Repl.Vol. 16A). However, this legal title was subject to the Randals' equitable title in the 11.26 acres.

Later, the Campbells entered into the loan agreement with the Bank, assigning the proceeds from the installment land contract to the Bank. When the Bank perfected its security interest in these proceeds, it "stood in the shoes" of the Campbells with regard to the contract proceeds, which were personal property.

When Citicorp obtained title at the foreclosure sale, it "stood in the shoes" of the Campbells as to their interest in the property itself and, thus, took legal title to the 40 acres subject to the Randals' equitable title to the 11.26 acres. *See Walker Inv. Co. v. Fleming,* 79 Colo. 434, 246 P. 207 (1926); *see also Century Enterprises, Inc. v. Butler,* 526 P.2d 1350 (Colo.App.1974) (not selected for official publication). However, Citicorp took no interest in the installment land sale contract proceeds because the Campbells had assigned that personal property right to the Bank prior to Citicorp's foreclosure.

■ Consequently, at the time of Citicorp's foreclosure, the Bank had a perfected security interest in the proceeds from the installment land sale contract for the 11.26 acres, and Citicorp had legal title to the 40 acres, subject to the Randals' equitable title to 11.26 acres.

### III.

Nevertheless, Citicorp urges that the trial court correctly determined that the right to "rents, issues and profits" upon the Campbells' default, as recited in the deed of trust, entitles it to the proceeds from the installment land sale contract because the Citicorp deed of trust was recorded before the proceeds were assigned to the Bank. In our view, the trial court's determination in this regard is incorrect.

■ The phrase "rents, issues and profits" refers to the products of the land, the annual rentals, the income derived therefrom, whether in money or in products. *People v. Gustafson,* 53 Cal.App.2d 230, 127 P.2d 627 (1942); *Equitable Life Insurance Co. v. Brown,* 220 Iowa 585, 262 N.W. 124 (1935). *See also In re Vedder's Will,* 15 N.Y.S. 798, 2 Con.Sur. 548 (1891). On the other hand, the proceeds from an installment land sale contract do not emanate from use of the land; instead, they are payments by the purchaser pursuant to a contract for sale and purchase of the land itself. J. Cribbett, *Principles of the Law of Property,* Ch. 3, § 2B (1962). Thus, the proceeds from an installment land sale contract, by definition, cannot be "rents, issues and profits" because they bear no relationship to the use of the land. Consequently, the fact that the Citicorp deed of trust predated the assignment to the Bank is irrelevant.

At the time the Campbells executed the deed of trust in favor of Citicorp, Citicorp was on record notice of the installment land sale contract. While Citicorp thus had the opportunity to obtain the proceeds from that contract as collateral for its loan, it failed to do so; the sole collateral listed on the Citicorp form is a legal description of the 40 acres. Thus, we conclude that the record contains no evidence that would entitle Citicorp to any interest in the proceeds from the installment land sale contract.

The judgment is reversed and the cause is remanded to the trial court for entry of summary judgment in favor of the Bank.

KELLY, J., concurs.

VAN CISE, J., specially concurs.

VAN CISE, Judge, specially concurring.

I concur in the result.

On June 15, 1977, the Campbells, as sellers, entered into the contract with the Randals as purchasers, for sale of 11.26 acres out of their 40 acre tract. At that time, the Randals acquired equitable title to the 11.26 acres, *see Ulander v. Allen,* 37 Colo. App. 279, 544 P.2d 1001 (1976), and the Campbells retained legal title to the entire 40 acres subject to the liens of the first and second deeds of trust as to the 40 acres and subject to the Randals' newly acquired equitable title to the smaller tract.

A few days later, a new second deed of trust was executed as to the entire 40 acres to secure a new loan by Citicorp, and the former second deed of trust was released. This new second trust deed was junior to the preexisting first trust deed and was subject to the Randals' equitable title to the 11.26 acres based on their contract.

Had the Campbells sold their interest in the 40 acres to Citicorp, without specifically retaining the right to the proceeds of sale from the Randals, Citicorp would have stood in the shoes of the Campbells with respect to the contract. It would have had "the rights as well as the obligations—the rights to receive the balance of the purchase price ... and the obligations to deliver possession and to convey title on payment of the purchase price." *Century Enterprises v. Butler*, 526 P.2d 1350 (Colo. App.1974) (not selected for official publication). *See also Walker Inv. Co. v. Fleming*, 79 Colo. 434, 246 P. 207 (1926), and *Johnson v. Perry*, 20 Wash.App. 696, 582 P.2d 886 (1978).

However, this was a loan and not a sale transaction, and the deed of trust referred only to the land and did not specifically refer to the contract either as included in the property securing the loan or as an encumbrance. And, since a deed of trust is a lien and not a conveyance, regardless of its terms, § 38–35–117, C.R.S. (1982 Repl. Vol. 16A), the Campbells did not convey the legal title. They still owned it when they assigned to the Bank the right to receive the proceeds of the sale contract.

The Campbells were not divested of the legal title until Citicorp received a public trustee's deed to the 40 acres following foreclosure and sale. At that time, standing in the shoes of the Campbells, Citicorp acquired legal title subject to the lien of the first trust deed and the obligations under the Randal contract, with Citicorp's rights under the contract being limited to the right to terminate on default in compliance with the terms of the contract, and a right to proceeds junior to the lien of the Bank on those proceeds.

Therefore, the trial court erred in granting summary judgment to Citicorp and in denying summary judgment to the Bank as to the right to the installment land contract proceeds.