152 P.3d 1020 (2007)
David L. TINGEY, Petitioner,
v.
Lloyd HAISCH and Lucy Haisch, husband and wife, and the marital community composed thereof, Respondents.
No. 77689-0.
Supreme Court of Washington, En Banc.
Argued September 19, 2006.
Decided February 15, 2007.
*1021 David L. Tingey, Law Office of David L. Tingey, Renton, for Petitioner.
Harold J. Moberg, Moses Lake, for Respondents.
FAIRHURST, J.
¶ 1 Petitioner attorney David Tingey performed legal services for respondents Lloyd and Lucy Haisch (hereinafter Haisch) on an hourly fee basis without a written fee agreement. Tingey challenges a Court of Appeals decision holding that his action to collect those fees is not governed by the RCW 4.16.040(2) six-year limitation for "an account receivable incurred in the ordinary course of business."[1] Tingey argues that the term *1022 "account receivable" has a plain meaning in Washington law and that the Court of Appeals, after improperly finding the term to be ambiguous, derived for the term an inappropriately narrow meaning that excluded his action. Haisch argues that the applicable statute of limitation for Tingey's action is the RCW 4.16.080(3) three-year limitation for oral contracts.[2]
¶ 2 We hold that the plain meaning of "account receivable" as used in RCW 4.16.040(2) is an amount due a business on account from a customer who has bought merchandise or received services. This meaning encompasses a balance owed by a client to an attorney for legal services performed on behalf of the client on an hourly fee basis without a written fee agreement. Thus the six-year limitation for "[a]n action upon an account receivable incurred in the ordinary course of business" applies to Tingey's action to collect attorney fees from Haisch. RCW 4.16.040(2). We reverse the Court of Appeals and reinstate the trial court's ruling on summary judgment that the six-year limitation applies.

I. FACTUAL AND PROCEDURAL HISTORY
¶ 3 Neither Tingey nor Haisch disputes the material facts of this case. In 1994 Tingey represented Haisch in a Grant County Superior Court lawsuit. They did not enter into a written fee agreement. Tingey regularly invoiced Haisch for legal services on an hourly fee basis and Haisch paid the invoices through June 1994. Tingey completed legal representation of Haisch in December 1994.
¶ 4 More than three years later, Tingey initiated a collection action against Haisch, alleging Haisch owed him in excess of $20,000 for legal services rendered plus interest accrued.[3] The trial court denied Haisch's motion to dismiss the action as time-barred by the three-year oral contract limitation of RCW 4.16.080(3). The trial court granted partial summary judgment to Tingey, ruling that the applicable statute of limitation for the action was six years. After Tingey prevailed on the merits in a bench trial, Haisch appealed the summary judgment ruling only.
¶ 5 The Court of Appeals Division Three reversed. Tingey v. Haisch, 129 Wash.App. 109, 117 P.3d 1189 (2005). After finding the term "account receivable" to be ambiguous, the Court of Appeals held that "`account receivable' in RCW 4.16.040(2) refers to an `open account,' that is `[a]n account that is left open for ongoing debit and credit entries by two parties and that has a fluctuating balance until either party finds it convenient to settle and close.'" Tingey, 129 Wash.App. at 117, ¶ 18, 117 P.3d 1189 (quoting BLACK'S LAW DICTIONARY 20 (8th ed.2004) (defining "open account," a sub-definition within the definition of "account")). Based on this definition, the Court of Appeals held that the six-year limitation for accounts receivable did not apply to Tingey's claim for attorney fees. Id. We granted Tingey's petition for review. Tingey v. Haisch, 156 Wash.2d 1035, 134 P.3d 1171 (2006).

II. ISSUE
¶ 6 Does the RCW 4.16.040(2) six-year limitation for an "action upon an account receivable incurred in the ordinary course of business" provide the limitation in an action to collect a balance owed by a client to an attorney for legal services performed on behalf of the client on an hourly fee basis without a written fee agreement?

III. ANALYSIS
¶ 7 The trial court ruled on summary judgment that the RCW 4.16.040(2) six-year account receivable limitation governed Tingey's action to recover attorney fees. This court reviews rulings on summary judgment de novo. Berrocal v. Fernandez, 155 *1023 Wash.2d 585, 590, ¶ 5, 121 P.3d 82 (2005). To resolve this matter we must ascertain the meaning of "account receivable" as used in RCW 4.16.040(2). We also review issues of statutory interpretation de novo. Berrocal, 155 Wash.2d at 590, ¶ 5, 121 P.3d 82.
A. Plain language analysis supplies the meaning of "account receivable" as used in RCW 4.16.040(2).
¶ 8 A court's objective in construing a statute is to determine the legislature's intent. State v. Jacobs, 154 Wash.2d 596, 600, ¶ 7, 115 P.3d 281 (2005). "`[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent.'" Id. (quoting Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 9-10, 43 P.3d 4 (2002)). A statutory provision's plain meaning is to be discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole. Id. A provision that remains susceptible to more than one reasonable interpretation after such an inquiry is ambiguous and a court may then appropriately employ tools of statutory construction, including legislative history, to discern its meaning. Campbell & Gwinn, 146 Wash.2d at 12, 43 P.3d 4.
¶ 9 Prior to 1989, an action upon an oral contract was subject to the former RCW 4.16.080(3) (1937) three-year statute of limitations.[4] This limitation encompassed a claim for attorney fees where there was no written fee agreement. Hart v. Day, 17 Wash.App. 407, 413, 563 P.2d 227 (1977). In 1989 the legislature amended RCW 4.16.040, the six-year statute of limitations, adding as a new category, "action[s] upon an account receivable incurred in the ordinary course of business."[5] Laws of 1989, ch. 38, § 1. The legislature simultaneously amended RCW 4.16.080(3), creating an exception to the three-year limitation on oral contracts for actions upon accounts receivable.[6] Laws of 1989, ch. 38, § 2. In making these changes the legislature did not define "account receivable."[7]
¶ 10 When a term has a well-accepted, ordinary meaning, a regular dictionary may be consulted to ascertain the term's definition. City of Spokane ex rel. Wastewater Mgmt. Dep't v. Dep't of Revenue, 145 Wash.2d 445, 454, 38 P.3d 1010 (2002). When a technical term is used in its technical field, the term should be given its technical meaning by using a "technical rather than a general purpose dictionary" to resolve the term's definition. City of Spokane, 145 Wash.2d at 454, 38 P.3d 1010.
¶ 11 The legislature modified account receivable with "incurred in the ordinary course of business." RCW 4.16.040(2). This statutory context suggests that the legislature intended to use the term in a technical business sense. Used as a term of art in the accounting and finance sectors, "accounts receivable" means "amounts due [a business] on account from customers who have bought merchandise or received services." JOEL G. SEIGEL & JAE K. SHIM, DICTIONARY OF ACCOUNTING TERMS 11 (3d ed.2000). Consistent with the legislature's usage, the Dictionary *1024 of Accounting Terms' technical definition of "accounts receivable" is likewise restricted to a business setting.
¶ 12 The term "account receivable" appears elsewhere in the Revised Code of Washington more than 10 times and is nowhere defined.[8] The legislature makes it apparent through this pattern of use that it considers the term "account receivable" to have a plain meaning. Obtaining the definition of "account receivable" from a technical business dictionary is consistent with plain meaning analysis. The technical definition for "account receivable," as "an amount due a business on account from a customer who has bought merchandise or received services," is the appropriate definition to read into RCW 4.16.040(2). The attorney fees owed to Tingey, for which he regularly invoiced Haisch, satisfy this meaning of "account receivable."
¶ 13 The dissent states that under our definition "all oral contracts for goods and services in the ordinary course of business have a six-year statute of limitation." Dissent at 1028. The dissent suggests, therefore, that our definition renders the term account receivable superfluous, contrary to established principles of statutory interpretation. Id. However, our definition of "account receivable" is considerably more narrow than the dissent represents. Our definition identifies the parties to the contract (a customer and a business) and the character of the transaction (a purchase by the customer). It requires the business to have completed performance (customer has bought or received the merchandise or services). It specifies the monetary nature of the remaining obligation (an amount due). Only oral contracts exhibiting all of these characteristics garner the account receivable six-year limitation.[9]
¶ 14 Both the Court of Appeals and the dissent deem the term "account receivable" to be ambiguous. Tingey, 129 Wash.App. at 114-15, ¶ 11, 117 P.3d 1189; dissent at 1028. The Court of Appeals based its determination in part on the fact that "account receivable" appears in a variety of contexts, from which it concluded that the term "has different meanings depending upon the context."[10]Tingey, 129 Wash.App. at 114, ¶ 10, 117 P.3d 1189. However, while "account receivable" is used in a wide variety of settings, close examination reveals that our definition encompasses the meaning of the term in those contexts.[11] Moreover, the use of "account receivable" in a broad range of business-related contexts supports the term having a well-accepted technical meaning.
¶ 15 The Court of Appeals also identified that "whether or not a particular debt constitutes an account receivable may be a factual question." Id. at 114, ¶ 10, 117 P.3d 1189. While accurate, this observation is not relevant to a plain language analysis of "account receivable." The meaning of "account receivable" as used in RCW 4.16.040 is a question of law. It must be resolved before applying the definition to a particular set of facts to determine whether a specific debt constitutes an "account receivable."
*1025 ¶ 16 Having found "account receivable" to be ambiguous, the Court of Appeals and the dissent resort to legislative history, from which they determine the intended meaning of "account receivable" to be an "open account." Tingey, 129 Wash.App. at 117, ¶ 18, 117 P.3d 1189; dissent at 1029-30. Although we do not find "account receivable" to be ambiguous, we examine the legislative history of RCW 4.16.040(2)[12] to demonstrate that it is inconsistent with the legislature's intending the term "account receivable" to mean "open account."
¶ 17 The dissent derives from the legislative history that "the bill was passed with the intent of limiting the definition of account receivable to open accounts." Dissent at 1029-30. This assertion is inconsistent with revision of the bill's language from "balance due upon a mutual, open, and current account, the items of which are in writing," S.B. 5213, 51st Leg., Reg. Sess. (Wash.1989), to "[a]n action upon an account receivable incurred in the ordinary course of business." Substitute S.B. 5213, 51st Leg., Reg. Sess. (Wash.1989). We agree with the dissent that by replacing " `the items of which are in writing'" with "`in the ordinary course of business,'" "the legislature intended to expand the scope . . . to instances where a business' ordinary practices may not include writing down the terms of the account." Dissent at 1030 (quoting S.B. 5213, supra; Substitute S.B. 5213, supra). But we find implausible the dissent's contention that substituting "account receivable" for " `mutual, open, and current account'" "do[es] not suggest . . . inten[t] to expand the six-year statute of limitations beyond open accounts." Dissent at 1030 (quoting S.B. 5213, supra). Retaining the open account language would be consistent with intending to limit the statute's scope to open accounts. Replacing that language with "account receivable" indicates intent to expand the scope of the statute beyond open accounts.
¶ 18 The dissent, relying on a floor debate excerpt, additionally states, "Senator Smitherman explained the term account receivable meant just an open account, and the bill passed following his explanation."[13] Dissent at 1030. However, the full context of the exchange reveals that after Senator Bill Smitherman provided his definition of account receivable, Senator Philip A. Talmadge proceeded to make further remarks. See dissent at 1030 n. 1; see also SENATE JOURNAL, 51st Leg., Reg. Sess., at 509 (Wash. 1989). Subsequently, "[f]urther debate ensued." SENATE JOURNAL, supra, at 509. That the bill was not put directly to a vote following Senator Smitherman's definition undermines the dissent's implication that the Senate responded to Senator Smitherman's definition by passing the bill. One senator's eight words during floor debate form a thin thread upon which to hang a legislative history analysis.
¶ 19 The bill's revision supports the conclusion that the legislature intended the bill to broaden the circumstances under which business debt was subject to a six-year statute of limitations. Senator Talmadge expounded on how the "account receivable" language would affect oral contracts to which businesses were a party, and the bill nevertheless passed the Senate later that day.[14], [15] The *1026 legislature's intent is further evidenced by the evolution of the Senate Bill Report language.[16] The legislative history supports the legislature's intending "account receivable" to have a broader meaning than open account.
¶ 20 The plain meaning of "account receivable" in RCW 4.16.040(2) is an amount due a business on account from a customer who has bought merchandise or received services. Tingey seeks to collect a balance owed to his legal business by a client for legal services performed on behalf of that client. Tingey performed the services on an hourly fee basis at the request of the client, and the client was regularly invoiced for the amount owed in accordance with ordinary business practice. The term "account receivable" encompasses the balance which Tingey seeks to collect, an amount owed to him for legal services performed in the ordinary course of his business. The six-year limitation of RCW 4.16.040(2) for "[a]n action upon an account receivable incurred in the ordinary course of business" provides the statute of limitations in this action.
B. The plain meaning of "account receivable" is corroborated by the absence of an absurd result produced in RCW 4.16.040(2).
¶ 21 The Court of Appeals supported its finding that "account receivable" was ambiguous with the assertion that defining the term broadly produced an absurd result. Where the legislature provides no statutory definition and a court gives a term its plain and ordinary meaning by reference to a dictionary, the court "will avoid literal reading of a statute which would result in unlikely, absurd, or strained consequences." Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles, 148 Wash.2d 224, 239, 59 P.3d 655 (2002). A reading that produces absurd results must be avoided because "`it will not be presumed that the legislature intended absurd results.'" State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003) (quoting State v. Delgado, 148 Wash.2d 723, 733, 63 P.3d 792 (2003) (Madsen, J., dissenting)). The outcome of plain language analysis may be corroborated by validating the absence of an absurd result. Where an absurd result is produced, further inquiry may be appropriate.
¶ 22 The Court of Appeals concluded that interpreting "account receivable" "to encompass all business debt" produced absurd results. Tingey, 129 Wash.App. at 115, ¶ 12, 117 P.3d 1189. The court suggested that the "account receivable" exception to the RCW 4.16.080(3) three-year limitation on oral contracts would "swallow[] the remainder of the statute. Business owners would no longer need to enter into written contracts to benefit from a six-year statute of limitations because RCW 4.16.040(2) would essentially convert all of their business debt into accounts receivable." Id.
¶ 23 As the Court of Appeals noted, the impact on actions to collect business debt is significant, but substantial effect is not equivalent to an absurd result. Incorporating the technical definition of "account receivable" does except from the three-year limitation any action brought by a business to collect an amount due on account from a customer who *1027 has bought merchandise or received services, in the ordinary course of business. The exception does not swallow the rule, however, because oral contracts between two private parties are still governed by the three-year limitation of RCW 4.16.080(3). Moreover, it is clear that the legislature considered the impact of the "account receivable" provision on the oral contract limitation because it amended that provision of former RCW 4.16.080(3) when it amended RCW 4.16.040(2).
¶ 24 By contrast, as noted by Tingey, a more narrow definition of "account receivable" would produce a truly absurd, unworkable result. The appropriate statute of limitation in a collection action for attorney fees cannot reasonably turn on a fact-specific inquiry into the accounting and billing practices of the attorney, the transactional characterization of the legal services provided, and the client's history of payments on the account. Such a definition would produce a significant volume of litigation as parties attempted to determine precisely what accounting practices were required to benefit from the six-year limitation. The ramifications would extend well beyond attorney-client fee collection actions to other professional service providers as well as general businesses.
¶ 25 Defining "account receivable" as "an amount due a business on account from a customer who has bought merchandise or received services" does not produce an absurd result. A more limiting definition of "account receivable" would. The absurd result test corroborates the meaning of "account receivable" arrived at through plain meaning analysis.

IV. CONCLUSION
¶ 26 We hold that the plain meaning of "account receivable" as used in RCW 4.16.040(2) is "an amount due a business on account from a customer who has bought merchandise or received services." This meaning encompasses a balance owed by a client to an attorney for legal services performed on behalf of the client on an hourly fee basis without a written fee agreement. RCW 4.16.040(2)'s six-year limitation for an action upon an account receivable incurred in the ordinary course of business applies to Tingey's action to collect attorney fees from Haisch. We reverse the Court of Appeals and reinstate the trial court's ruling on summary judgment that the six-year limitation applies.
WE CONCUR: Chief Justice GERRY L. ALEXANDER, Justices SUSAN OWENS, RICHARD B. SANDERS, JAMES M. JOHNSON, and BOBBE J. BRIDGE.
BARBARA A. MADSEN, J., concurs in result only,
CHAMBERS, J. (dissenting).
¶ 27 One fine spring day a dairy farmer sold 200 gallons of milk to a customer, spent two hours repairing a neighbor's tractor at an agreed upon hourly rate, and loaned a utility trailer to another neighbor with the understanding that the trailer would be returned the next year when, in lieu of rent, the neighbor would install new wheels and tires on the trailer. Our farmer occasionally has similar transactions with both neighbors. That fine spring day our industrious farmer also sold an old riding lawn mower, which he used mostly to mow the lawn around the farm house but occasionally to trim the grass and weeds from his fields. The used riding lawn mower was sold to an acquaintance across the valley for some money up front and the buyer's promise to mow the farmer's lawn and trim grass and weeds from some farm areas all summer. All of the farmer's transactions were oral, but he considered each an account receivable. The question we must answer is, if the farmer sought to judicially enforce any of these oral agreements, which statute of limitations applies?
¶ 28 Historically, those who rely on such oral contracts instead of written ones have had less time to seek judicial enforcement. The reason is obvious. Courts have more confidence in their ability to find the intent of the parties if that intent has been written down. Further, misunderstandings between parties concerning specific terms are greatly reduced if the specific terms are in writing. Memories often do not withstand the force of time while written terms are precisely preserved *1028 indefinitely. In recognition of these principles, our legislature provided six years to enforce written contracts, RCW 4.16.040(1), but only three years for other contracts, RCW 4.16.080(3).

THE AMBIGUOUS MEANING OF ACCOUNT RECEIVABLE
¶ 29 "Account receivable" is not defined in chapter 4.16 RCW or any other statute. Petitioner David Tingey argues that the word "receivable" is clear and means "a thing that can be received." Pet. for Review at 5. Further, he argues that "account" is defined as a "`right to payment of a monetary obligation, whether or not earned by performance . . . for service rendered or to be rendered.'" Pet. for Review at 5 n. 1 (quoting RCW 62A.9A102(a)(2)(A)(ii)). Thus, Tingey concludes that account receivable means "`any right to payment for . . . services rendered which is not evidenced by an instrument or chattel paper . . . 'that can be received." Pet. for Review at 6 (quoting RCW 62A.9A-102(c)(2)(A)). The majority has adopted Tingey's definition with the addition that the transaction must be in connection with a business. Majority at 1024.
¶ 30 According to the majority, "[t]he plain meaning of `account receivable' in RCW 4.16.040(2) is an amount due a business on account from a customer who has bought merchandise or received services." Majority at 1026. I believe that under the majority's holding, likely all of our dairy farmer's spring day transactions, including the sale of the milk and the lawn mower, the tractor repair, and the leased utility trailer resulted in accounts receivable and are subject to a six-year statute of limitations. Their status is, at least, very debatable. This court can, over the next several decades and at the cost of numerous appellate cases, define account receivable in the ordinary course of business by case law or, much more preferably in my view, the legislature could define account receivable or account receivable in the ordinary course of business for us.
¶ 31 Webster's Third New International Dictionary defines an account receivable as "a balance due from a debtor on a current account." Webster's Third New International Dictionary 13 (2002). A "current account" is defined as "an account between two parties having a series of transactions not covered by evidences of indebtedness (as notes or certificates) and usu. subject to settlements at stated intervals (as monthly or quarterly)." Id. at 557 (emphasis added).
¶ 32 This definition is inconsistent with the definition derived from the accounting dictionary. At the very least, the difference suggests the term is ambiguous. Account receivable means different things based on the context. The Court of Appeals explored some of the different uses:
[T]he term "account receivable" as it appears in legal proceedings, or as it is defined in dictionaries, has different meanings depending upon the context. In litigation, the term is used in the context of: (1) the sale and valuation of businesses, (2) adversary proceedings during bankruptcy proceedings, and (3) priority disputes between secured parties. In a legal dictionary, any balance owed by a debtor is considered an "account receivable." Other times, an account receivable is the balance owed on (1) an unsettled account or (2) an open account. Finally, whether or not a particular debt constitutes an account receivable may be a factual question.
Tingey v. Haisch, 129 Wash.App. 109, 114, 117 P.3d 1189 (2005) (footnotes and citations omitted). The meaning of the term "account receivable," let alone the phrase "account receivable in the ordinary course of business," is not apparent from its face. A statute is unambiguous only "when the statutory language admits of only one meaning." State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003). The variety of distinct definitions of account receivable demonstrates that the statutory language is susceptible to more than one interpretation. Faced with different reasonable definitions, we must examine the legislative history to determine which reasonable definition the legislature intended. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 12, 43 P.3d 4 (2002); see also majority at 1023. The result of such an inquiry supports interpreting the statute *1029 as referring to open accounts. This interpretation, in addition to reflecting the legislature's intent, is in accord with the principles supporting shorter statutory periods limiting claims based on oral rather than written contracts.
¶ 33 If the legislature meant that all business contracts for goods and services should have a six-year statute of limitation, it would surely have said so. It did not. Instead, it added limiting language the majority would define to make meaningless. The legislature intended that an account receivable, not just any business contract, should be entitled to the same statute of limitations as written contracts.
¶ 34 Our goal is to determine the legislature's intent, and we will avoid absurd results. J.P., 149 Wash.2d at 450, 69 P.3d 318 (citing Nat'l Elec. Contractors Ass'n v. Riveland, 138 Wash.2d 9, 19, 978 P.2d 481 (1999)). I admire the majority's ability to see clearly through cloudy water, but sometimes the water itself distorts the object of scrutiny. The most basic problem with the majority's definition is that it is so broad that the exception swallows the general rule. It means that all oral contracts for goods and services in the ordinary course of business have a six-year statute of limitation. Again, the legislature could have but did not say that all oral contracts for goods and services would enjoy a long statute of limitations usually reserved for written agreements. The result of the majority's interpretation is that the term account receivable has no meaning, and an interpretation making a statute's term superfluous must be rejected. We have held, time and again, that "[s]tatutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous." Whatcom County v. City of Bellingham, 128 Wash.2d 537, 546, 909 P.2d 1303 (1996) (citing Stone v. Chelan County Sheriffs Dep't, 110 Wash.2d 806, 810, 756 P.2d 736 (1988); Tommy P. v. Bd. of County Comm'rs, 97 Wash.2d 385, 391, 645 P.2d 697 (1982)).

LEGISLATIVE HISTORY
¶ 35 Confusion over the meaning of account receivable in the ordinary course of business was apparent during the debate over its passage in the Senate. Even so, the legislature failed to define account receivable in the statute. However, the discussions held by the Senate before it passed the bill that became RCW 4.16.040(2), Substitute S.B. 5213, 51st Leg., Reg. Sess. (Wash.1989), reveal that the legislature did not intend the definition we adopt today. Before the bill passed, then-Senator Talmadge expressed his concerns that an account receivable is difficult to define, stating that the senate could simplify the bill to include all contracts, including oral ones. He said:
"[T]he problem is, I think, that there is that difficulty in determining what is or is not an account receivable incurred in the ordinary course of business and an oral contract. It seems to me if we are going to reconsider this we may want to do it right and simply provide for a six year statute of limitations for all contracts."
SENATE JOURNAL, 51st Leg., Reg. Sess., at 509 (Wash.1989).[1] The legislature declined and passed the bill "as is" despite Senator *1030 Talmadge's concerns.[2] Senator Smitherman explained the term account receivable meant just an open account, and the bill passed following his explanation and over Senator Talmadge's dissenting vote. The legislative history suggests that the bill was passed with the intent of limiting the definition of account receivable to open accounts. An "open account" is, "[a]n account that is left open for ongoing debit and credit entries by two parties and that has a fluctuating balance until either party finds it convenient to settle and close."[3] BLACK'S LAW DICTIONARY 20 (8th ed.2004).
¶ 36 Tingey and the majority contend that the legislative history tells a different story, pointing out that the bill was amended before it passed. The original version, which did not pass, read: "A balance due upon a mutual, open, and current account, the items of which are in writing." S.B. 5213, 51st Leg., Reg. Sess. (Wash.1989). Although the legislature's rejection of this language is noteworthy, the subsequent comments by Senator Smitherman suggest account receivable was intended to encapsulate the open account language used in the first version. Apparently "receivable" modified account in the same way "open" did, making the phrase "open account receivable" redundant. The significant change was not the deletion of the open account language, it was the deletion of "the items of which are in writing," and the addition of "in the ordinary course of business." This suggests the legislature intended to expand the scope of the six-year statute of limitations to instances where a business' ordinary practices may not include writing down the terms of the account. It appears the legislature wanted to include in the six-year statute of limitations open accounts that were established without a written agreement. In such cases, bills are sent and paid without a formal contract. The changes suggest the legislature did not want to exclude such open accounts. They do not suggest the legislature intended to expand the six-year statute of limitations beyond open accounts.
¶ 37 The majority describes this reading of the legislative history as "implausible." In a vacuum, the majority may have a point. But we examine the legislative history in its full context and must reconcile the Senate's decision to change the language of the bill with the definition of the term given before its passage. Senator Smitherman was of the view that an account receivable meant an open account; the change in language could not have been intended to expand the term accounts receivable beyond the definition the legislative history provides.
¶ 38 The majority argues that attention should be paid to the fact that "`[f]urther debate ensued'" following Senator Smitherman's definition. Majority at 1025. The majority argues that the fact the bill was not put "directly to a vote" following Senator Smitherman's definition of the term "undermines" my view that the "Senate responded to Senator Smitherman's definition by passing the bill." Id. It is correct that debate ensued, but what was its result? The Senate was divided with respect this bill. Senator Talmadge heard Smitherman's definition and offered a more expansive definition similar to the definition the majority adopts today. That expansive definition lost. No changes were made and Senator Talmadge did not vote for the bill. Yes, there was debate. And there was an alternative position articulated by Senator Talmadge. But Smitherman's position won the day. We have in the legislative history an articulation of a definition of account receivable. The majority has chosen to ignore the legislative history and instead adopt a technical definition from an accounting dictionary.

CONCLUSION
¶ 39 I have observed that when I receive goods and services based upon verbal agreements *1031 from businesses, the businesses often provide me with an invoice and regular statements showing the status of my account. I know that such an account is an account payable for me and an "account receivable" for the business. Such accounts, which benefit from regular written statements, have many of the merits of a written contract. Although there is no written agreement, the balance owing and many of the terms are memorialized in writing and, generally, may be enforced with confidence by a court of law. I am of the view and agree with the Court of Appeals that such "open" accounts are what the legislature had in mind when amending RCW 4.16.080.
¶ 40 Despite the legislative history which indicates the legislature, wisely I believe, intended that account receivable under this bill would be limited to open accounts, we are urged to ignore this history because the term is plain on its face. The term, however, is anything but plain. It means different things in different contexts.
¶ 41 Finally, I am concerned by the lack of balance of briefing in this case.[4] This case is brought by a lawyer against a client who is either unable or unwilling to pay. There was no written fee agreement between the parties. For more than three years the lawyer did not bill, nor did the client pay on the account. The lawyer subsequently turned the account over to a collection agency.
¶ 42 Given the posture of this case, the Court of Appeals attempted to avoid an absurd result of permitting the exception to swallow the general rule, concluding that "`account receivable'" meant "`open account,'" which is "`[a]n account that is left open for ongoing debit and credit entries by two parties and that has a fluctuating balance until either party finds it convenient to settle and close.'" Tingey, 129 Wash.App. at 111, 117 P.3d 1189 (quoting Black's Law Dictionary 20 (8th ed.2004)). The Court of Appeals believed that the legislature intended to limit account receivable to revolving charge accounts. Id. at 116, 117 P.3d 1189. The Court of Appeals made an admirable attempt at divining the intent of the legislature. I am not persuaded that the majority has the correct crystal ball. I appeal to the legislature to clear the waters and clearly define account receivable for RCW 4.16.040(2).
¶ 43 But I would further affirm because this is an egregious case. A lawyer failed to enter into a written fee agreement with a client, did not send statements for over three years, and then assigned his claim to another. Such claims have always been barred by the three-year statute of limitations, and I cannot believe the legislature intended this case to proceed. I respectfully dissent.
I CONCUR: Justice CHARLES W. JOHNSON.
NOTES
[1] RCW 4.16.040(2) provides that "[a]n action upon an account receivable incurred in the ordinary course of business" shall commence within six years.
[2] RCW 4.16.080(3) provides that "[e]xcept as provided in RCW 4.16.040(2), an action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument" shall commence within three years.
[3] United Collection Services, Inc. (United) initially filed suit against Haisch on Tingey's behalf. Following mandatory arbitration, which resulted in an award to Haisch, United requested a trial de novo and Tingey was substituted as real party in interest.
[4] Former RCW 4.16.080(3) provided that "an action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument" shall be commenced within three years.
[5] RCW 4.16.040 provides:

The following actions shall be commenced within six years:
(1) An action upon a contract in writing, or liability express or implied arising out of a written agreement.
(2) An action upon an account receivable incurred in the ordinary course of business.
(3) An action for the rents and profits or for the use and occupation of real estate.
[6] As revised, RCW 4.16.080(3) provides that "[e]xcept as provided in RCW 4.16.040(2), an action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument" shall be commenced within three years. (Emphasis added.)
[7] The dissent announces its preference for statutory definitions, dissent at 1028, and "appeal[s] to the legislature to . . . clearly define account receivable for RCW 4.16.040(2)." Dissent at 1031. Greater statutory clarity is always preferable. However, this court's duty does not stop at merely requesting remedial legislative action. We must discern what the legislature intended by the statutory language that it did enact.
[8] See, e.g., RCW 7.60.100; RCW 13.40.060; RCW 28A.320.080; RCW 41.50.160; Title 60 RCW; RCW 70.105D.020; Title 82 RCW.
[9] These characteristics likewise would determine whether the hypothetical transactions of the dissent's imaginary dairy farmer would constitute accounts receivable. Dissent at 1028.
[10] The dissent agrees. Dissent at 1028.
[11] For instance, examining illustrations advanced by the Court of Appeals, in the "sale and valuation of businesses," Tingey, 129 Wash.App. at 114, ¶ 10, 117 P.3d 1189, "account receivable" referred to the outstanding fees owed to a law firm for professional services rendered. In re Marriage of Nichols, 27 Cal.App.4th 661, 33 Cal. Rptr.2d 13, 17-18 (1994). In "priority disputes between secured parties," Tingey, 129 Wash.App. at 114, ¶ 10, 117 P.3d 1189, "account receivable" is defined as "`any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper.'" Rocky Mountain Ass'n v. Hessler Mfg. Co., 37 Colo.App. 551, 553 P.2d 840, 843 (1976) (quoting Colo.Rev.Stat. § 4-9-106 (1973)). Where an "account receivable" is the "balance owed on . . . an unsettled account," Tingey, 129 Wash.App. at 114, ¶ 10, 117 P.3d 1189, "account" is "generally defined as an unsettled claim or demand, by one person against another, which creates a debtor-creditor relationship between them." 1 Am.Jur.2d Accounts & Accounting § 1 at 620-21 (2005). These usages are not inconsistent with an account receivable being an amount due a business on account from a customer who has bought merchandise or received services.
[12] RCW 4.16.040(2) was amended in the 1989 legislative session. Laws of 1989, ch. 38, § 1. For consistency we adopt the dissent's practice of referring to this legislation, introduced as Senate Bill 5213 and later revised as "the bill." See S.B. 5213, 51st Leg., Reg. Sess. (Wash.1989); Substitute S.B. 5213, 51st Leg., Reg. Sess. (Wash.1989).
[13] Senator Smitherman: "`I believe it's just an open account, Senator.'" SENATE JOURNAL, 51st Leg., Reg. Sess., at 509 (Wash.1989).
[14] Senator Talmadge remarked, in part:

"[T]he problem is, if I enter into an oral contract with you, that's something that's a three year statute of limitations now and a three year statute of limitations under this bill. If I enter into an oral contract with you and you go back to your business and you say, `"Well, I think I will carry that on my books,"' and you treat it as an account receivable, then it's something that would carry with it a six year statute of limitations."
Senate Journal, 51st Leg., Reg. Sess., at 509 (Wash.1989).
[15] The dissent suggests that, upon hearing Senator Smitherman's definition, Senator Talmadge "offered a more expansive definition similar to the definition the majority adopts . . . [and t]hat expansive definition lost." Dissent at ___ ___. Close reading of Senator Talmadge's remarks reveals that, rather than proposing a definition, he was warning the Senate that the problem with the bill was its broader definition of account receivable. Despite Senator Talmadge's warning, as the dissent notes, no changes were made and the bill was passed. Id.
[16] The Senate Bill Report that initially accompanied the bill when it failed to pass the Senate on March 2, 1989, SENATE JOURNAL, supra, at 488 (Wash.1989), stated "that the statute of limitations should be extended to six years for all actions based on an open and current account, which is in writing." S.B. Rep. on S.B. 5213, 51st Leg., Reg. Sess. (Wash.1989) (emphasis added). Upon reconsideration the following day, the bill passed, Senate Journal, supra, at 509 (Wash. 1989), accompanied by a revised Senate Bill Report that "suggested that the statute of limitations should be extended to six years for all actions based on an account receivable." S.B. Rep. on Substitute S.B. 5213, 51st Leg., Reg. Sess. (Wash.1989) (emphasis added).

The House Bill Report indicated that "[t]he statute of limitations is set at six years for an account receivable incurred in the ordinary course of business. This six-year period applies whether or not the account receivable is based on a written contract." H.B. Rep. on Substitute S.B. 5213, 51st Leg., Reg. Sess. (Wash.1989) (emphasis added).
[1] The full context of that exchange:

Senator Talmadge: "Senator Smitherman, the problem with this bill is what the definition of an account receivable is when incurred in the ordinary course of business. Would you define what an account receivable incurred in the ordinary course of business might be and maybe the difference between that and somebody just entering into an oral contract?"
Senator Smitherman: "I believe it's just an open account, Senator."
Senator Talmadge: "Well, the problem is, if I enter into an oral contract with you, that's something that's a three year statute of limitations now and a three year statute of limitations under this bill. If I enter into an oral contract with you and you go back to your business and you say, `Well, I think I will carry that on my books,' and you treat it as an account receivable, then it's something that would carry with it a six year statute of limitations. The problem is, I think, that there is that difficulty in determining what is or is not an account receivable incurred in the ordinary course of business and an oral contract. It seems to me if we are going to reconsider this we may want to do it right and simply provide for a six year statute of limitations for all contracts."
SENATE JOURNAL, 51st Leg., Reg. Sess., at 509 (Wash.1989).
[2] Senator Lee: "Senator Smitherman, is your reason for asking for reconsideration so that it can be returned to second reading for purposes of an amendment or just simply to pass it as is?"

Senator Smitherman: "To pass it as is, Senator."
Id.
[3] An "open account" is also defined as occurring "where the parties intend that the individual transactions in the account be considered as a connected series, rather than as independent of each other." 1 Am.Jur.2d Accounts & Accounting § 4, at 624 (2005).
[4] The respondents, Lloyd and Lucy Haisch, did not file briefs before this court. Tingey was supported by an amicus curiae brief and memorandum submitted by the trade organization Association of Credit and Collection Professionals (ACA) International. Tingey filed a petition for review, a supplemental brief, and a response to the amicus curiae brief of ACA International. In short, we were presented five briefs in favor of Tingey and none in favor of the Haischs.