212 P.3d 587 (2009)
GLACIER NORTHWEST, INC. Respondent,
v.
Timothy T. WALKER, Appellant,
Department of Labor & Industries, Defendant.
No. 38150-8-II.
Court of Appeals of Washington, Division 2.
July 28, 2009.
*588 Steven L. Busick, Steven L. Busick Attorney at Law, Vancouver, WA, for Appellant.
Aja E. Hicks, Ronald Wayne Atwood, Ronald W. Atwood PC, Portland, OR, for Respondent.
John R. Wasberg, Office of the Attorney General, Seattle, WA, for Other Parties.
HOUGHTON, J.
¶ 1 Timothy Walker appeals from a trial court ruling terminating his employer's responsibility to pay time-loss benefits under RCW 51.32.090(4). Walker sustained an on the job injury by his own fault, after which his employer, Glacier Northwest, Inc., terminated his employment because he had not followed company safety protocols. Later, when Walker had partially recovered from his injuries, a medical professional released him to perform light duty work that Glacier had available but was not offering to Walker because it had fired him. Glacier sought to establish that its liability for time-loss benefits had terminated under RCW 51.32.090(4) because the modified work was available "but for" the firing for cause, and the trial court agreed.
¶ 2 We hold that RCW 51.32.090(4) does not apply to this case because it requires the employee to begin the modified work before time-loss benefits cease. We further disagree with Glacier that this result is absurd because Glacier has other remedies available to it to ensure that its payments reflect Walker's ability to work. Therefore, we reverse the trial court's decision and remand for further proceedings.

*589 FACTS
¶ 3 Glacier hired Walker as a Redi-Mix concrete truck driver on July 11, 2005. On August 15, he took a turn too fast and the truck he was driving rolled onto its side. Under a longstanding company policy of terminating drivers who overturn cement trucks by their own error, Glacier fired him on September 20.
¶ 4 Walker sustained substantial injuries in the incident, so he applied for benefits with the Department of Labor and Industries (L & I) on September 27. L & I allowed the claim and directed Glacier, a self-insured employer, to pay all medical and time-loss compensation benefits required under chapter 51.32 RCW.
¶ 5 On November 28, Walker's doctors released him to perform light duty work. Glacier had a light duty position open at the time, but it did not offer it to Walker because it had terminated him. Nonetheless, Glacier requested that it be allowed to stop paying him time-loss compensation under RCW 51.32.090(4) because the job would have been "available" absent his termination for cause. L & I concluded that the light duty work was not "available" to Walker and ordered Glacier to continue paying time-loss compensation. Clerk's Papers (CP) at 14.
¶ 6 After exhausting its administrative remedies with L & I, Glacier sought superior court review. On July 29, 2008, the trial court ruled in Glacier's favor, concluding that
Timothy T. Walker[ ] was able to perform light duty work and such work was available to him but for his termination due to driver error in causing the rollover of the employer's truck. The termination of his employment occurred for reasons wholly unrelated to the industrial injury or receipt of workers' compensation benefits. Therefore, the employer met its obligation under RCW 51.32.090(4) to provide modified work to an injured worker and Mr. Walker is not entitled to time-loss compensation.
CP at 15-16. Walker appeals.

ANALYSIS
¶ 7 Walker argues that the trial court erred in allowing Glacier to stop paying time-loss compensation to him because (1) his employment termination was not "wholly unrelated" to the industrial injury and (2) RCW 51.32.090(4) does not apply. In reversing, we consider only his second argument.
¶ 8 When interpreting a statute, we begin our review with the statutory language itself. See Tingey v. Haisch, 159 Wash.2d 652, 657, 152 P.3d 1020 (2007). If the statute's meaning is plain on its face, we apply that meaning. Tingey, 159 Wash.2d at 657, 152 P.3d 1020. We discern plain meaning not only from the statutory language but also from the context surrounding the statute, related provisions, and the statutory scheme as a whole. Tingey, 159 Wash.2d at 657, 152 P.3d 1020. Only if a provision remains susceptible to more than one reasonable interpretation do we employ tools of statutory construction to discern its meaning. Tingey, 159 Wash.2d at 657, 152 P.3d 1020. And when interpreting the Industrial Insurance Act, Title 51 RCW, we must resolve all doubts in the worker's favor. Harry v. Buse Timber & Sales, Inc., 166 Wash.2d 1, 8, 201 P.3d 1011 (2009); see RCW 51.12.010.
¶ 9 RCW 51.32.090(4) applies whenever the "employer of injury" offers the injured employee work "other than his or her usual work" and a medical professional certifies that the employee is physically able to do so.[1] *590 RCW 51.32.090(4)(a). When invoking this provision, the employer may stop paying time-loss benefits, but only after the employee "begins the work with the employer of injury." RCW 51.32.090(4)(a). In this case, Glacier does not intend for Walker to ever begin working for it; therefore, its argument that RCW 51.32.090(4)(a) justifies termination of its time-loss payments conflicts with the statute's plain language.
¶ 10 Nevertheless, Glacier contends that because it fired Walker for cause, it "would lead to absurd and unjust results," Resp't's Br. at 34, to require Walker to "physically return to the work site to begin work before terminating his employment and time loss benefits." Resp't's Br. at 33. See Densley v. Dep't of Retirement Sys., 162 Wash.2d 210, 233, 173 P.3d 885 (2007) (In undertaking a plain language analysis, a court must avoid interpreting a statute in a manner that leads to unlikely, strained, or absurd results.). Glacier's argument does not persuade us. Where, as here, subsection (4)(a) does not apply, an employee's transition into alternative work is covered by subsection (3), which provides for "reduced time-loss compensation" or "LEP [loss of earning power benefits]" when the employee performs modified work at a wage lower than that paid for the job of injury.[2]Hubbard v. Dep't of Labor & Indus., 140 Wash.2d 35, 43, 992 P.2d 1002 (2000). That subsection specifically provides that "[a]s soon as recovery is so complete that . . . the present earning power is . . . partially restored, the payments shall . . . equal eighty percent of the actual difference between the worker's present wages and earning power at the time of injury." RCW 51.32.090(3). Where the employee cannot do modified work with the employer of injury, that employer may attempt to "force" the employee to find modified work elsewhere by requesting vocational rehabilitation services from L & I.[3]See generally RCW 51.32.095. As counsel explained at argument before us, Glacier has not taken advantage of these opportunities; it relies exclusively on RCW 51.32.090(4) for the relief that it seeks. Under these circumstances, we cannot conclude that not applying RCW 51.32.090(4) produces an absurd result.
¶ 11 Glacier also argues generally that because Walker's actions justified his firing, his termination "should not result in liability to the employer." Resp't's Br. at 25. We are sympathetic to the apparent incongruity of having to pay wage replacement benefits to an employee who has been fired for misconduct. Indeed, this concern underlies our decision in O'Keefe v. Department of Labor and Industries, 126 Wash.App. 760, 109 P.3d 484 (2005), on which Glacier relies. But in that case, the employee's misconduct and firing occurred after he returned to do light duty work, an important distinction for two reasons. First, RCW 51.32.090(4) applied under its plain language because the employee had "beg[un] the work with the employer of injury," unlike in this case. See also In re Chad Thomas, No. 00 10091, 2001 WL 1193934 (Wash.Bd.Indus.Ins.Appeals, July 31, 2001); In re Sean M. Murphy, No. 95 5987, 1997 WL 207916 (Wash.Bd.Indus.Ins.Appeals, Feb. 14, 1997).[4] Second, the firing and the *591 termination of benefits had a logical relationship to each other in that case because they both occurred at the same time.
¶ 12 Here, Glacier never challenged its obligation to pay time-loss benefits during Walker's total disability, even though he had already been fired; it was only after he partially recovered that Glacier asserted Walker's misconduct as a reason to terminate the payments. We can discern no reason why the basis for Walker's firing would only become relevant at that point in time and not before; therefore, we will not read an over-arching exception into RCW 51.32.090(4) for any firing for cause. The trial court erred in ruling that RCW 51.32.090(4) applied to Walker.

ATTORNEY FEES
¶ 13 Walker requests attorney fees on appeal under RAP 18.1 and RCW 51.52.130. RCW 51.52.130(1) provides in relevant part,
If, on appeal to the superior or appellate court from the decision and order of the board, . . . a party other than the worker or beneficiary is the appealing party and the worker's or beneficiary's right to relief is sustained, a reasonable fee for the services of the worker's or beneficiary's attorney shall be fixed by the court.
Because Walker prevails on appeal, we award him attorney fees under this provision.
¶ 14 Reversed and remanded.
We concur: VAN DEREN, C.J., and PENOYAR, J.
NOTES
[1] The statute provides in relevant part:

Whenever the employer of injury requests that a worker who is entitled to temporary total disability under this chapter be certified by a physician or licensed advanced registered nurse practitioner as able to perform available work other than his or her usual work, the employer shall furnish to the physician or licensed advanced registered nurse practitioner, with a copy to the worker, a statement describing the work available with the employer of injury in terms that will enable the physician or licensed advanced registered nurse practitioner to relate the physical activities of the job to the worker's disability. The physician or licensed advanced registered nurse practitioner shall then determine whether the worker is physically able to perform the work described. The worker's temporary total disability payments shall continue until the worker is released by his or her physician or licensed advanced registered nurse practitioner for the work, and begins the work with the employer of injury.
RCW 51.32.090(4)(a).
[2] Glacier correctly notes that when the employee becomes able to work any job, "temporary total disability benefits" terminate. Hubbard v. Dep't of Labor & Indus., 140 Wash.2d 35, 43, 992 P.2d 1002 (2000). But that does not mean that the employee receives no compensation; what replaces those benefits is the "reduced time-loss compensation" provided by RCW 51.32.090(3). Hubbard, 140 Wash.2d at 43, 992 P.2d 1002.
[3] RCW 51.32.090(3) does not explicitly require a partially recovered worker to find alternate work, but once L & I undertakes to evaluate whether vocational rehabilitation services would be beneficial, any worker who either refuses evaluation or does not cooperate in the rehabilitation itself faces potential reduction, suspension, or denial of his compensation. RCW 51.32.110(2).
[4] In one recent case, the Washington Board of Industrial Insurance Appeals concluded that it was not necessary for the employee to "begin[] the work with the employer of injury" when he was terminated for cause. In re Jeffrey W. Pedersen, No. 06 18967, 2007 WL 4986282 (Wash.Bd.Indus.Ins.Appeals, Dec. 17, 2007). In Pedersen, the Board concluded without discussion that the reasoning in Thomas applied even though the employee had not begun the alternate job as required in RCW 51.32.090(4). But we do not defer to agency interpretations of a statute that conflict with the plain language. Nelson v. Appleway Chevrolet, Inc., 160 Wash.2d 173, 184, 157 P.3d 847 (2007).